**In re KELLER FINANCIAL
SERVICES OF FLORIDA,
INC., Debtor.**

**Bankruptcy Nos. 98–5299–8G1, 98–
5361–8G1 to 98–5369–8G1.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Sept. 1, 1999.

David S. Jennis, Williams, Reed, Weinstein, Schifino & Mangione, P.A., Tampa, Florida, for debtor.

Rufus T. Dorsey, IV, Parker, Hudson, Rainer & Dobbs LLP, Atlanta, Georgia, Douglas P. McClurg, Hill, Ward & Henderson, Tampa, Florida, for Official Committee of Noteholders.

John K. Olson, Mark J. Bernet, Sterns, Weaver, Miller, Weissler, Alhadeff & Sitterson, P.A., Tampa, Florida, for Chapter 11 Trustee.

Kevin T. O'Halloran, Atlanta, Georgia, Chapter 11 Trustee.

Theresa M. Boatner, Tampa, Florida, U.S. Trustee.

## ORDER ON FIRST AND FINAL APPLICATION FOR ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED BY WILLIAMS REED WEINSTEIN SCHIFINO & MANGIONE, P.A., AND JOINT OBJECTION BY TRUSTEE AND NOTEHOLDERS' COMMITTEE

PAUL M. GLENN, Bankruptcy Judge.

**THIS CASE** came before the Court for hearing to consider the First and Final Application for Allowance of Compensation for Services Rendered and for Reimbursement of Expenses Incurred by Williams Reed Weinstein Schifino & Mangione, P.A., as Attorneys for the Debtors, and the Joint Objection to the Application filed by Kevin O'Halloran, as Trustee for the Debtors' estates, and the Official Committee of Noteholders.

### Background

The Debtors filed their voluntary petitions under chapter 11 of the Bankruptcy Code on April 1 and April 2, 1998. The Debtors initially were represented by Dominic L. Massari, III, although no Order authorizing Massari's employment has been entered.

On May 6, 1998, the United States Trustee filed a Motion to Appoint a Chapter 11 Trustee in the cases, and the Official Committee of Noteholders (the Notehold-

ers' Committee) filed a separate Motion for the Appointment of a Chapter 11 Trustee on June 1, 1998. The Motions were scheduled for final evidentiary hearing beginning July 15, 1998.

On July 1, 1998, Williams Reed Weinstein Schifino & Mangione, P.A. (Williams Reed) filed an Application for Employment as Co–Counsel for the Debtors. The Application was accompanied by an Affidavit of David S. Jennis, an attorney with Williams Reed, stating that no attorney in Williams Reed represented a person with an interest adverse or potentially adverse to the Debtors. The Affidavit was supplemented on July 2, 1998.

The Court verbally approved Williams Reed's Application for Employment at a hearing conducted on July 2, 1998. The immediate focus of Williams Reed's services centered on defending the Motions to Appoint a Chapter 11 Trustee filed by the United States Trustee and the Noteholders' Committee. The evidentiary hearing on the Motions was conducted on July 15, 16, and 17, 1998.

On July 27, 1998, the Court entered an Order Authorizing the Employment of Williams Reed as Counsel for the Debtors. The Order authorized the Debtors to employ Williams Reed as counsel "nunc pro tunc as of and including June 26, 1998," and further directed the disbursement of the sum of $75,000 to Williams Reed "to be held by Williams Reed as a general retainer for the fees and costs incurred in connection with Williams Reed's representation of the Debtors."

The Motions to Appoint a Chapter 11 Trustee were granted following the evidentiary hearing, and on July 28, 1998, an Order was entered approving the appointment of Kevin O'Halloran as the chapter 11 trustee in the cases.

On November 17, 1998, Williams Reed filed its First and Final Application for Allowance of Compensation for Services Rendered and for Reimbursement of Expenses Incurred as Attorneys for the Debtors. In the Application, Williams Reed requested approval of compensation for legal services provided to the Debtors in the amount of $91,968.50 for the period commencing on June 19, 1998, and extending through November 16, 1998, and also requested reimbursement for expenses incurred in the amount of $5,109.41, for a total award of $97,077.91. The Application acknowledges that Williams Reed received the retainer in the amount of $75,000 at the commencement of its postpetition representation of the Debtors. An itemization of the services rendered is attached to the Application, which includes a description of each service provided, the date of the service, the attorney performing the service, the amount of time devoted to each service, and the amount charged for the service.

On December 23, 1998, the Court entered an Order Allowing Interim Compensation to Williams Reed. In the Order, Williams Reed was awarded interim compensation in the amount of $60,000 to be credited to the amount requested in its Application, and Williams Reed was authorized to disburse the sum of $60,000 from the postpetition retainer previously received. The Order further provided that the interim award was without prejudice to the rights of the Trustee, the United States Trustee, and the Noteholders' Committee to object to the Application, and that the amount awarded as interim compensation was subject to disgorgement in the event that a lesser amount was ultimately awarded.

On March 11, 1999, Williams Reed filed a Declaration and Supplemental Disclosure pursuant to Bankruptcy Rules 2014 and 2016. The Supplemental Disclosure was signed by David S. Jennis and contains the following disclosures:

1. William J. Schifino, Jr., (Schifino) an attorney with Williams Reed, initially met with Henry and Dorothy Wilson (the Wilsons) on July 16, 1998, to discuss claims asserted by the Wilsons against Southern Capital Securities and Steven

Hutek, and also to discuss Williams Reed's representation of the Wilsons in connection with those claims.

2. The claims included claims arising out of the Wilsons' purchase of notes from three Debtor entities.

3. Schifino spoke with Steven Hutek on July 16 or July 17, 1998, regarding the claims.

4. On July 28, 1998, Schifino provided an engagement letter to the Wilsons.

5. The Wilsons executed the engagement letter on July 29, 1998, and the executed letter was received by Schifino on or about July 30, 1998.

6. On August 28, 1998, Williams Reed filed a Statement of Claim on behalf of the Wilsons against Steven Hutek and Southern Capital Securities with the Arbitration Tribunals of the National Association of Securities Dealers.

In the Declaration and Supplement, Williams Reed amended its Application for Compensation to reduce the amount of compensation requested by the sum of $5,000, "which amount represents the compensation requested by Williams Reed for all services rendered after July 31, 1998; other than compensation requested for the services rendered in response to the Trustee's requests that Williams Reed furnish information to the Trustee or his counsel or in connection with the preparation of the Application."

On March 31, 1999, Kevin O'Halloran, as Trustee of the Debtors' estates, and the Noteholders' Committee filed a Joint Objection to the Fee Application of Williams Reed. In the Joint Objection, the Trustee and the Noteholders' Committee object to the Application on two separate grounds.

First, the Trustee and the Committee assert that Williams Reed was not disinterested as of July 16, 1998, as a result of its representation of the Wilsons, and that Williams Reed should therefore be denied compensation pursuant to § 328(c) of the Bankruptcy Code. According to the Trustee and the Committee, Williams Reed was not disinterested as a result of the representation because the Debtors were obligated to indemnify Steven Hutek and Southern Capital Securities, Inc. for certain claims that might be asserted against them as a result of the sale of the Debtors' notes. Southern Capital Securities, Inc. and Steven Hutek were the securities dealer and registered representative who sold the Debtors' notes to the Wilsons, and had entered into a Selling Agency Agreement with the Debtors which provided:

9.a. The Corporation will indemnify and hold the Selling Agent harmless against any losses, claims, damages or liabilities, joint or several, to which the Selling Agent may become subject under the Act, the various state securities laws, or otherwise, insofar as such losses, claims, damages or liabilities (or actions in respect thereof) arise out of or are based upon any untrue statement or alleged untrue statement of any material fact contained in the Registration Statement or arise out of or are based upon the omission to state therein a material fact required to be stated therein or necessary to make the statements therein not misleading; ...

Based on this obligation to indemnify, the Trustee and the Noteholders' Committee contend that the actions of Williams Reed on behalf of the Wilsons triggered a contingent claim against the Debtors and that, as a result, Williams Reed was no longer disinterested within the meaning of § 328(c) of the Bankruptcy Code. The Trustee and the Committee also contend that Williams Reed did not adequately disclose its lack of disinterestedness until the Declaration and Supplemental Disclosure on March 11, 1999, and that this violation of the disclosure rules is independent of the violation of the disinterestedness requirement.

Second, the Trustee and the Noteholders' Committee assert that Williams Reed is not entitled to compensation for services after July 28, 1998, because services provided by a debtor's attorney after the ap-

pointment of a chapter 11 trustee are not compensable from assets of the estate. Citing *In re Pro–Snax Distributors, Inc.,* 157 F.3d 414 (5th Cir.1998), the Trustee and Committee claim that § 330(a)(1) of the Bankruptcy Code only permits compensation to a professional person employed by a trustee, including a debtor-in-possession, but not to a professional person employed by a debtor.

## Discussion

**I. Conflicts, disinterestedness, and disclosure.**

### A. The Statutes and Rules.

The Bankruptcy Code and Federal Rules of Bankruptcy Procedure contain various provisions to ensure the impartiality of professionals in their representation of clients in bankruptcy cases. Section 327(a) of the Bankruptcy Code provides:

**11 U.S.C. § 327. Employment of professional persons**

(a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, *that do not hold or represent an interest adverse to the estate, and that are disinterested persons,* to represent or assist the trustee in carrying out the trustee's duties under this title.

(Emphasis supplied). Pursuant to § 327, therefore, professional persons employed by the trustee must not hold or represent an interest adverse to the estate, and must be disinterested. "Disinterested person" is defined in § 101(14) of the Bankruptcy Code:

**11 U.S.C. § 101. Definitions**

\* \* \* \* \* \*

(14) "disinterested person" means person that—

\* \* \* \* \* \*

(E) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity securi-

ty holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor or an investment banker specified in subparagraph (B) or (C) of this paragraph, or for any other reason.

To qualify for employment under § 327(a), a professional person must file a statement disclosing any facts impacting on his disinterestedness or representation of any interest adverse to the estate.

**Rule 2014. Employment of professional Persons**

**(a) APPLICATION FOR AN ORDER OF EMPLOYMENT.** An order approving the employment of attorneys, accountants, appraisers, auctioneers, agents, or other professionals pursuant to § 327, § 1103, or § 1114 of the Code shall be made only on application of the trustee or committee. . . . The application shall state the specific facts showing . . . to the best of the applicant's knowledge, *all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.*

(Emphasis supplied).

An attorney representing a debtor in a bankruptcy case must also file a statement disclosing all compensation paid or agreed to be paid for services rendered in connection with the case. 11 U.S.C. § 329(a); Fed.R.Bankr.P.2016(b).

In the event that a professional person represents an interest adverse to the interest of the estate, or is not a disinterested person, the Court may deny compensation and reimbursement pursuant to § 328(c). Section 328(c) provides:

**11 U.S.C. § 328. Limitation on compensation of professional persons**

\* \* \* \* \* \*

(c) Except as provided in section 327(c), 327(e), or 1107(b) of this title, the court *may deny allowance of compensation*

for services and reimbursement of expenses of a professional person employed under section 327 or 1103 of this title *if, at any time during such professional person's employment under section 327 or 1103 of this title, such professional person is not a disinterested person, or represents or holds an interest adverse* to the interest of the estate with respect to the matter on which such professional person is employed.

(Emphasis supplied). Thus, § 328(c) permits, but does not require, a court to deny compensation and reimbursement to professionals who are not disinterested persons or who represent or hold an interest adverse to the interest of the estate.

## B. Interpretation.

Several principles are established pursuant to these statutory provisions and rules.

 First, a professional person employed by the trustee must be disinterested and must not hold or represent an interest adverse to the estate. Section 327 "imposes two express requirements." First, the professional must be a disinterested person, as defined in § 101(14) of the Bankruptcy Code, and second, the professional must not hold or represent an interest adverse to the estate. *In re Granite Partners, L.P.,* 219 B.R. 22, 32 (Bankr. S.D.N.Y.1998). It is a "specific requirement that professionals have no conflict of interest with the estate." *In re EWC, Inc.,* 138 B.R. 276, 279 (Bankr.W.D.Okla. 1992).

 Second, having an "interest materially adverse to the interest of the estate," as that phrase is used in the definition of "disinterested person" contained in § 101(14), is interpreted broadly as:

> possessing, or serving as an attorney for a person possessing, either an "economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant ... or ... a predisposition un-

der the circumstances that render such a bias against the estate."

*In re Prince,* 40 F.3d 356, 361 (11th Cir. 1994) (quoting *Roger J. Au & Son, Inc. v. Aetna Ins. Co.,* 64 B.R. 600, 604 (N.D Ohio 1986) and *In re Roberts,* 46 B.R. 815, 822–23 (Bankr.D.Utah 1985)). The definition of "adverse interest" has developed to include "either (1) the possession or assertion of any economic interest that would tend to lessen the value of the bankruptcy estate or create an actual or potential dispute with the estate as a rival claimant, or (2) a predisposition of bias against the estate." *In re Granite Partners, L.P.,* 219 B.R. at 33. "More generally, it includes any interest or relationship, however slight, 'that would even faintly color the independence and impartial attitude required by the Code and Bankruptcy Rules.'" *Id.* at 33 (citing *In re Roberts,* 46 B.R. at 828 n. 26). It should be noted that § 327(c) provides that a person is not disqualified for employment solely because of such person's representation of a creditor, unless there is an appropriate objection, in which case the court shall disapprove such employment if there is an actual conflict of interest.

 Third, a professional person is required to disclose "all of the person's connections with" the debtor, creditors, and parties in interest pursuant to Rule 2014. "The scope of disclosure is much broader than the question of disqualification.... The applicant and the professional must disclose all connections and not merely those that rise to the level of conflicts." *In re Granite Partners, L.P.,* 219 B.R. at 35. The professional must disclose all facts that bear on his disinterestedness, and cannot usurp the court's function by unilaterally choosing which connections impact on his disinterestedness and which do not. Even arguable conflicts must be disclosed. *Id.*

These disclosure requirements are not discretionary. The duty of professionals is to disclose all connections with the debtor, debtor-in-possession, insiders,

creditors, and parties in interest as well as fee arrangements. They cannot pick and choose which connections are irrelevant or trivial.

\*　　\*　　\*　　\*　　\*　　\*

Violation of the disclosure rules alone is enough to disqualify a professional and deny compensation, regardless of whether the undisclosed connections or fee arrangements were materially adverse to the interests of the estate or were de minimis.

*In re EWC, Inc.*, 138 B.R. at 280. See also *In re Smitty's Truck Stop, Inc.*, 210 B.R. 844, 850 (10th Cir. BAP 1997).

■ Fourth, the duty to disclose "all connections" is a continuing duty that does not terminate when the professional's employment is approved. *In re Diamond Mortgage Corp.*, 135 B.R. 78, 90 (Bankr. N.D.Ill.1990).

> "Rule 2014(a) does not expressly require supplemental or continuing disclosure.... Nevertheless, section 327(a) implies a duty of continuing disclosure, and requires professionals to reveal connections that arise after their retention.... Continuing disclosure is necessary to preserve the integrity of the bankruptcy system by ensuring that the trustee's professionals remain conflict free."

*In re Granite Partners, L.P.*, 219 B.R. at 35. "[A] professional employed under 11 U.S.C. § 327(a) is under a continuing obligation to supplement its 2014 statement if circumstances change." *In re Olsen Industries, Inc.*, 222 B.R. 49, 59 (Bankr. D.Del.1997). Section 328(c) further demonstrates the need for the continuing duty to disclose connections which arise after the retention of the professional.

■ Finally, the remedy for a professional person's violation of the continuing duty to disclose may be denial of the professional's compensation. "Failure to disclose connections that have the potential for creating a conflict warrants a denial of all compensation to debtor's counsel." *In*

*re Smitty's Truck Stop, Inc.*, 210 B.R. at 850. See also *In re Olsen Industries, Inc.*, 222 B.R. at 61, in which the Bankruptcy Court noted that the debtor had cited many cases, such as *In re Hot Tin Roof Inc.*, 205 B.R. 1000 (1st Cir. BAP 1997), for the proposition that a disclosure violation warrants denial of a pending fee application. "Violation of the disclosure rules alone is enough to disqualify a professional and deny compensation, regardless of whether the undisclosed connections or fee arrangements were materially adverse to the interests of the estate or were de minimis." *In re EWC, Inc.*, 138 B.R. 276, 280 (Bankr.W.D.Okla.1992).

## C.　Application.

In this case, the Trustee and the Noteholders' Committee do not contend that Williams Reed was not disinterested when it filed its Application for Employment on July 1, 1998, or when the Application was verbally approved on July 2, 1998. Instead, they contend that circumstances subsequently changed on or about July 16, 1998, when an attorney with Williams Reed met with Harry and Dorothy Wilson regarding possible claims arising from the Wilsons' purchase of Notes issued by the Debtors. The ultimate issue is whether any such change of circumstance constituted the representation of an adverse interest or affected the disinterestedness of Williams Reed, or should have been disclosed in accordance with Rule 2014 of the Bankruptcy Rules.

■ Williams Reed acknowledges that Schifino met with the Wilsons on July 16, 1998, and that the meeting involved the possible representation of the Wilsons by Williams Reed in connection with the Wilsons' purchase of the Notes. Schifino spoke with Steven Hutek by telephone on July 16 or July 17, 1998. At that time, other attorneys at Williams Reed were preparing for and handling the evidentiary hearing on the motions of the U.S. Trustee and the Noteholders' Committee for the appointment of a chapter 11 trustee, which

was conducted over the course of three full days on July 15, 16, and 17, 1998. Williams Reed states in its Supplemental Disclosure that it "did not undertake representation of the Wilsons at that time due to the pendency of the Trustee Motions and Williams Reed's representation of the Debtors as then debtors-in-possession." Schifino, Jennis, and Robert V. Williams each assure the Court that Williams Reed did not undertake the representation of the Wilsons at this time. The Court has considered their assurances, and concludes that Williams Reed did not undertake the representation of the Wilsons on July 15, 16, or 17, 1998.

Williams Reed did undertake the representation of the Wilsons subsequently. On July 24, 1998, the Court entered its order granting the motions to appoint a chapter 11 trustee, and on July 28, 1998, Kevin O'Halloran qualified to serve as trustee and the Court entered an order approving his appointment and beginning his service as trustee. Also on July 28, 1998, Williams Reed provided an engagement letter to the Wilsons. The Wilsons executed the engagement letter on July 29, 1998, and the fully executed engagement letter was received by Williams Reed on or about July 30, 1998.

Williams Reed indicates that it decided to accept the representation of the Wilsons after the Court granted the motions to appoint a chapter 11 trustee. Once the trustee qualified and was appointed, Williams Reed provided the engagement letter to the Wilsons, the Wilsons signed the letter, and the letter was returned to Williams Reed on or about July 30, 1998.

 The continuing duty to disclose matters which may impact on conflicts or disinterestedness arises from the disclosure requirements of § 327, the compensation limitations of § 328(c), and Rule 2014. It is a continuing duty, and requires disclo-sure of connections which affect the qualifications of an attorney for employment under § 327 or the limitations on compensation of an attorney under § 328(c). In this case, Williams Reed was no longer the attorney for the trustee [1] or for the debtor in possession [2] when it undertook the representation of the Wilsons, and it further asserts that it was unaware of any basis by which the representation of the Wilsons would be adverse to the interests of the estate.

Certainly, there may be circumstances where conferences or other "connections" with a person should be disclosed, even though representation of such person is not undertaken or even though representation is undertaken at a time when the attorney is not the attorney for the "trustee." More time may elapse than elapsed in this instance, preparatory work may be involved, conferences may take place, relationships may be developed, or other events may transpire, and such connections may require disclosure. However, in this case, the circumstances do not require the Court to conclude that the "connections" with the Wilsons should have been disclosed prior to the time that the representation of the Wilsons was undertaken. Accordingly, under the circumstances, and in view of the Court's conclusions in Section II below, the Court concludes that the compensation of Williams Reed should not be reduced or disapproved because Williams Reed did not disclose the connections with Wilsons after the initial meeting or when it undertook the representation.

Section 328(c) provides that compensation may be denied "if at any time during such professional person's employment under section 327" such professional person is not a disinterested person or has a disqualifying conflict of interest. Since Williams Reed was no longer the attorney for the trustee or for the debtor in posses-

---

1. A debtor in possession has, with exceptions not applicable here, the powers and duties of a trustee (§ 1107).

2. A debtor is no longer a debtor in possession once a person is serving as trustee in a case. (§ 1101).

sion when it undertook the representation of the Wilsons, any conflict which may have arisen at that time did not arise "during such professional person's employment under section 327." Accordingly, compensation to Williams Reed for its services as attorney for the debtor in possession should not be disallowed under § 328(c).

If, while Williams Reed was the attorney for the debtor in possession, the representation of the Wilsons had been undertaken or the connections with the Wilsons were such as to require disclosure, Williams Reed would have had the duty to disclose the representation or the connections, and the qualification of Williams Reed to continue as the attorneys for the debtor in possession could have been considered. Additionally, if required disclosures had not been made, or if the representation of the Wilsons had been undertaken while Williams Reed was the attorney for the debtor in possession and the representation had not been disclosed, the Court would consider disallowing or reducing the compensation of Williams Reed for its services for the debtor in possession. Further, there may be circumstances where the representation of or connections with a person prior or subsequent to the representation of a debtor in possession would cause a court to disallow or reduce compensation to the attorney for its representation of the debtor in possession. However, in this case, the representation was not undertaken while Williams Reed was the attorney for the debtor in possession, disclosure was not required under the circumstances, and the circumstances do not require the court to reduce or deny compensation to Williams Reed as attorney for the debtor in possession.

## II. Compensation for representation of trustee or debtor.

Since Williams Reed was not the attorney for the trustee or the debtor in posses-

sion after July 28, 1998, the issue arises as to whether it can be compensated from the estate for services rendered after that date as attorney for the debtor.

### A. Statutes.

Section 503 provides for the allowance of administrative expenses in bankruptcy cases. The section provides that administrative expenses include the compensation and reimbursement of attorneys under § 330(a):

**11 USC § 503. Allowance of administrative expenses**

. . . . .

(b) After notice and a hearing, there shall be allowed *administrative expenses*, other than claims allowed under section 502(f) of this title, *including —*

. . . . .

(2) compensation and reimbursement *awarded under section 330(a)* of this title;

. . . . .

(Emphasis supplied). Section 330(a) provides that the court may award compensation "to a professional person employed under section 327":

**11 USC § 330. Compensation of officers**

(a)(1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, *the court may award to* a trustee, an examiner, *a professional person employed under section 327* or 1103—

(A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by any such person; and

(B) reimbursement for actual, necessary expenses.

(Emphasis supplied). Professional persons employed under section 327 include attorneys. These professionals are employed by the trustee, to represent or assist the trustee in carrying out the trustee's duties:

**11 USC § 327. Employment of professional persons**

(a) Except as otherwise provided in this section, *the trustee,* with the court's approval, *may employ* one or more *attorneys,* accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, *to represent or assist the trustee in carrying out the trustee's duties* under this title.

.　　.　　.　　.　　.

(Emphasis supplied).

In a case under chapter 11, a debtor in possession has the rights and powers of a trustee:

**11 USC § 1107. Rights, powers, and duties of debtor in possession**

(a) Subject to any limitations on a trustee serving in a case under this chapter, and to such limitations or conditions as the court prescribes, *a debtor in possession shall have all the rights,* other than the right to compensation under section 330 of this title, *and powers,* and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, *of a trustee* serving in a case under this chapter.

.　　.　　.　　.　　.

(Emphasis supplied). A debtor is no longer a debtor in possession when a person that has qualified under section 322 is serving as trustee:

**11 USC § 1101. Definitions for this chapter**

In this chapter—

(1) *"debtor in possession" means debtor except when a person that has qualified*

*under section 322 of this title is serving as trustee* in the case;

.　　.　　.　　.　　.

(Emphasis supplied).

**B. Interpretation.**

Section 330(a) provides that the court may award compensation "to a professional person employed under section 327." Section 327 includes attorneys among the professional persons which may be employed. Section 330(a) does not provide for compensation for a professional person who is not employed under § 327.

▪ A debtor in a case under chapter 11 is a debtor in possession and has the rights and powers of a trustee, except when a person that has qualified under section 322 is serving as trustee. Accordingly, once a chapter 11 trustee has qualified and is serving, the debtor is no longer a debtor in possession, and the attorney for the debtor is no longer an attorney for a debtor in possession.

The fact that a chapter 11 trustee is appointed and the debtor is no longer a debtor in possession does not mean that the debtor no longer exists or no longer needs representation. The trustee may operate the business of the debtor (§ 1108). Additionally, the trustee has several duties, including the duty to investigate the acts of the debtor and the financial condition of the debtor (§ 1106), the duty to file a plan (§ 1106), and the duties to be accountable for property received and to account for the administration of the estate (§§ 1106 & 704). However, if the debtor is a corporation, the trustee does not replace the shareholders, nor is the corporate entity necessarily dissolved. The corporate entity remains a debtor (§ 101(13)), and has the statutory obligations to cooperate with the trustee and to surrender to the trustee all property of the estate and all recorded information (§ 521).

Prior to the 1994 amendments to the Bankruptcy Code, § 330(a) provided that

the Court may award compensation "to the debtor's attorney" as well as "to a professional person employed under section § 327." Standards developed for awards to debtors' attorneys, generally assessing whether the services benefited the estate.

The 1994 amendments to the Bankruptcy Code deleted the provision in § 330(a) that the court may award compensation "to the debtor's attorney," and the section now provides only that compensation may be awarded "to a professional person employed under § 327."

Some courts have viewed the deletion of the provision for compensation "to the debtor's attorney" as inadvertent, and continue to award compensation to the debtor's attorney even though the attorney is not employed by the trustee under § 327. See, for example, *In re Miller*, 211 B.R. 399 (Bankr.D.Kan.1997). The Second Circuit Court of Appeals has stated that it is "inclined to agree" that the deletion was inadvertent, and has asserted that "if the services of a debtor's attorney 'are reasonably likely to benefit the debtor's estate, they should be compensable.'" *In re Ames Department Stores, Inc.*, 76 F.3d 66, 72 (2d Cir.1996) (citing 2 Collier ¶ 330.04 at 330–43).

The Fifth Circuit Court of Appeals recently considered the issue in a more extensive opinion, and concluded that regardless of whether the deletion of the phrase "to the debtor's attorney" was intentional or inadvertent, the statute is not ambiguous and must be followed. *Andrews & Kurth L.L.P. v. Family Snacks, Inc. (In re Pro–Snax Distributors, Inc.)*, 157 F.3d 414 (5th Cir., 1998). The Fifth Circuit stated:

> Although the legislative history and, indeed, a brief syntactical evaluation of the clause at issue suggest that Congress inadvertently neglected to include attorneys, our canons of construction do not require—nay, do not permit—us to consider these exogenous sources when the statute is clear textually on its face.

*Id.* at 425. The Fifth Circuit considered congressional intent, and concluded that "a clear determination cannot be made as to whether Congress 'intended' to disallow all fees to a debtor's counsel after the appointment of a Chapter 11 trustee." *Id.* at 423. The court also considered public policy, as well as a number of other arguments raised by the attorneys for the debtor. The court concluded:

> We decide the issue before us bound by our conventions of statutory construction, even though common sense might lead the lay observer to conclude that a different result is perhaps more appropriate. The law, and the rules to which we adhere in order to interpret it, does not always conform to the dictates of common sense. In this case, we are faced with a statute which is clear on its face. It excludes attorneys from its catalog of professional officers of a bankruptcy estate who may be compensated for their work after the appointment of a Chapter 11 trustee.

*Id.* at 425.

■■■ The opinion of the Fifth Circuit is extensive and thorough, and addresses many more considerations than have been raised in this case. Accordingly, the Court concludes that § 330 does not authorize an award of compensation for services rendered as attorney for the debtor after a chapter 11 trustee has qualified and is serving.

## C. Application.

In this case, O'Halloran qualified and began serving as trustee on July 28, 1998. After July 28, 1998, the Debtor was no longer a debtor in possession, and no longer had the rights and powers of a trustee. Accordingly, after July 28, 1998, Williams Reed was no longer the attorney for the "trustee."

Since § 330 provides only for compensation to an attorney employed by the trustee, § 330 does not authorize the court to award compensation to Williams Reed for

its services as attorney for the Debtor after July 28, 1998.

## Conclusion

In this case, Williams Reed performed substantial legal services under difficult circumstances. The Debtors' cases involved complex, sophisticated issues, significant debt, numerous creditors, and considerable publicity. Williams Reed agreed to undertake the representation after the cases had been filed, and the Debtors' original attorney was unable to continue due to health concerns. Extensive litigation, including the motions to appoint a chapter 11 trustee, was already scheduled or in progress when Williams Reed filed its Application for Employment. Williams Reed was required to prepare quickly for the extensive evidentiary hearing on the motions to appoint the trustee. The services provided by Williams Reed were proficient and reasonable. Finally, Williams Reed asserts that it was unaware of any basis by which the representation of the Wilsons would be adverse to the Debtors or the Debtors' estates, and further that it did not undertake the representation until it was no longer the attorney for the debtor in possession. Williams Reed should be compensated for its services to the debtor in possession.

The issue, however, is whether Williams Reed may be compensated from the assets of the estate for the services rendered when it was not employed by the trustee and was not representing or assisting the trustee in carrying out the trustee's duties. The Court concludes that such compensation is not authorized by § 330(a), and cannot be awarded. The fees requested for the period after July 28, 1998, to which the Trustee and the Noteholders' Committee object are in the amount of $9,808.60. Consequently, the fees requested should be reduced by that amount, leaving a final award for compensation for services of $82,159.90. The Trustee and the Noteholders' Committee did not object to the expenses requested by Williams Reed, and

the expenses will be approved as requested in the amount of $5,109.41.

Accordingly:

**IT IS ORDERED** that:

1. The First and Final Application for Allowance of Compensation for Services Rendered by Williams Reed Weinstein Schifino & Mangione, P.A., as Attorneys for the Debtors is approved in part and disapproved in part as set forth in this Order.

2. Williams Reed Weinstein Schifino & Mangione, P.A. is awarded the sum of $82,159.90 as compensation for professional services rendered in this case, together with the sum of $5,109.41 as reimbursement for expenses incurred, for a total award of $87,269.31. Williams Reed previously received an interim award in the amount of $60,000 on December 23, 1998, so that the balance of the award due to Williams Reed is $27,269.31.

3. The Joint Objection by Trustee and Noteholders' Committee to Fee Application of Williams Reed Weinstein Schifino & Mangione, P.A. is sustained in part and overruled in part as set forth in this Order.