**In re GULF COAST ORTHOPEDIC CENTER—Alfred O. Bonati, M.D., P.A., Debtor.**

No. 96–14739–8P1.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

June 27, 2001.

Paul J. Battista, Miami, FL, for Debtor.

Gary W. Roberts, West Palm Beach, FL, for Post Petition/Administrative Expense Claimants.

Theresa Boatner, Tampa, FL, Office of the United States Trustee.

Marsha Griffin Rydberg, Tampa, FL, for Malpractice Creditors.

Susan K. Woodard, Saint Petersburg, FL, Chapter 7 Trustee.

John K. Olson, Tampa, FL, for Chapter 7 Trustee.

Jeffrey W. Warren, Tampa, FL, for Johnson, Blakely, Pope, Ruppel & Burns, P.A.

Adelaide Few, Tampa, FL, Assistant United States Attorney's Office.

## ORDER ON MOTIONS SEEKING DISGORGEMENT OF FEES (DOC. NOS.: 963, 986, 1060, 1068)

ALEXANDER L. PASKAY, Bankruptcy Judge.

Gulf Coast Orthopedic Center (GCOC) has been operating from a common location with three of its affiliates: Medical Development Corporation (MDC), GCOC Physical Therapy (GCOC—PT), and American Medical Care Inc. (AMC) providing elective outpatient surgery and ancillary services to patients with spine disc and joint problems. The Debtor and its affiliates are known as the "The Bonati Institute for Advanced Arthroscopic Surgery" (Bonati Group) share not only the premises owned by MDC, but also administrative, marketing, billing, and collection for all the operating units of the Bonati Group. The Debtor and its Affiliates have common shareholders officers and directors. Dr. Bonati and his wife Patricia Bonati are the sole shareholders of all the entities making up the Bonati Group. Cecelia O'Ryan, Dr. Bonati's sister managed the day to day operation of the business end of the operation.

Prior to October 1996, more than 40 former patients sued Dr. Bonati and GCOC and sought damages in the millions based on alleged malpractice by Dr. Bonati and GCOC. One of the suits filed by what is referred to as the Ammirati Group (Malpractice Creditors) actually obtained a money judgment in the amount of $2 million compensatory and $1.5 million punitive damages against Dr. Bonati and GCOC, albeit the judgment was reversed and was remanded for a new trial. This suit was still pending at the time GCOC sought protection in this Court when it filed its voluntary petition under Chapter 11 on October 29, 1996. Dr. Bonati also filed his own individual Chapter 11 petition on the very same day.

The law firm of Johnson Blakely, Pope, Bokor, Ruppel & Burns, P.A. (Johnson Blakely) represented the Bonati entities prior to the commencement of the Chapter 11 cases of GCOC and Dr. Bonati. On November 15, 1996, Charles M. Tatelbaum of the law firm of Johnson Blakely filed an Application on behalf of GCOC and sought authorization to be employed as counsel for the Debtor–in–Possession. (DIP) Johnson Blakely did not disclose its representation of the non-debtor affiliates of GCOC when it filed its Application, in clear violation of F.R.B.P.2014(a). Specifically, the Application to employ the law firm of Johnson Blakely signed by Dr. Bonati and Mr. Tatelbaum stated in paragraph 3 that Johnson Blakely has not represented any of the creditors in this matter or any other party in interest. Accompanying the Application, the Affidavit signed by Mr. Tatelbaum stated that all facts and matters contained in the application are true and correct and that neither he nor his law firm represents any interest adverse to the estate or the proposed representation.

Johnson Blakely filed seven Fee Applications for compensation and reimbursement of expenses. This Court entered orders on five of the Applications approving professional fees to Johnson Blakely in the amount of $224,198 and expense reimbursements in the amount of $9,083.26. Johnson Blakely has actually been paid $162,737 plus the initial retainer of $30,000.

When Mr. Tatelbaum joined the law firm of Cummings & Lockwood, in the Application to be retained Mr. Tatelbaum stated that he became a partner of Cummings & Lockwood on June 1, 1998, that GCOC will continue to utilize the services of Julius J. Zschau of Johnson Blakely as lead general counsel and also utilize the support staff of Johnson Blakely and the law firm of Cummings & Lockwood. An Affidavit of Lawrence Farese, managing partner of Cummings & Lockwood which accompanied the Application, it is stated that there is no adverse interest represented by Cummings & Lockwood and in paragraph 3 stated that Cummings & Lockwood does not represent any interest adverse to the estate, has not previously represented the Debtor and to the best of the knowledge of the Affiant, never represented a creditor or insider of the Debtor. As noted earlier, the Application was approved on July 15, 1998 and authorized Cummings & Lockwood to continue as co-counsel for GCOC. Cummings & Lockwood filed three interim applications for compensation. This Court approved two of the applications for a total of $77,700. The Debtor has paid this sum in full. On November 22, 1996, this Court entered an Order and approved the employment of Mr. Tatelbaum of the law firm Johnson Blakely. Dr. Bonati also filed his Application for authority to employ Mr. Tatelbaum and the Application was approved by an Order entered on November 27, 1996. After Mr. Tatelbaum left the firm of Johnson Blakely in June 1998 he continued to provide legal services to GCOC and Dr. Bonati and the Bonati entities as partner in the law firm of Cummings & Lockwood. Other attorneys in the same firm also provided legal services for the non-debtor affiliates. Pursuant to an Order dated July 15, 1998, this Court authorized partial substitution of attorneys for GCOC and authorized GCOC to also employ the law firm of Cummings & Lockwood as co-counsel.

On November 27, 1996, Mr. Tatelbaum of the law firm of Johnson Blakely filed an Application for authority to employ Cherry, Bekaert & Holland (CBH) to act as accountant both for the corporate case and for the individual case of Dr. Bonati. The Application was accompanied by an affidavit of Robert White, a principal in the account firm of CBH. Mr. White in his affidavit disclosed that prior to the commencement of the bankruptcy case his firm represented the Debtor but he did not believe that such prior representation created an adverse interest. Mr. White also disclosed that the Debtor is indebted to the firm in the amount of $43,600. The Affidavit of Mr. White is totally silent concerning the firm's representation of the non-debtor affiliates. This Application was also approved by this Court by an Order entered on December 10, 1996.

After numerous attempts by Dr. Bonati to achieve reorganization, his individual case was dismissed on April 22, 1998.

GCOC filed several Disclosure Statements and Plans of Reorganization but none of the seven Plans submitted reached confirmation. On July 11, 2000, this Court directed the appointment of an Examiner. In due course, the Examiner filed his Report. The Examiner found that the law firm of Johnson Blakely simultaneously represented GCOC, Dr. and Mrs. Bonati, Cecilia O'Ryan and her husband Felix O'Ryan and non-Debtor affiliates both pri-

or to and during the Chapter 11 case, specifically MDC and GCOC–PT. It further appears from the Examiner's Report that the accounting firm of CBH was also employed at the same time this Court authorized the employment to GCOC to render services to the affiliates of the Debtor. At least some of these related persons owed money to the Debtor or were creditors of the Debtor. On September 21, 2000, this Court entered an Order and converted the Chapter 11 case of GCOC to a Chapter 7 liquidation case, granting the Amended Motion to Dismiss or Convert filed by the U.S. Trustee and by the Malpractice Creditors and appointed a Chapter 7 trustee, Susan Woodard, with limited authority to operate the medical facility of GCOC.

The matters under immediate consideration are the following:

(1) Motion for an Order for Disgorgement of Fees of Johnson Blakely filed by Susan K. Woodard, the Chapter 7 Trustee (Trustee).

(2) Motion for an Order of Disgorgement of Cummings & Lockwood filed by the United States Trustee (U.S. Trustee)

(3) Motion for Summary Judgment by Cummings & Lockwood re: disgorgement.

(4) Motion for Summary Judgement by Johnson Blakely re: Disgorgement.

The Trustee in her Motion alleges that both law firms throughout this Chapter 11 case continued to render legal services to non-debtor Bonati entities at the same time they represented the Debtor, GCOC. She further alleges (1) that Bonati filed a proof of claim in the case of GCOC (Claim No. 147) in the amount of $160,250 plus interest and costs; and (2) that MDC, another non-debtor affiliate of GCOC, also filed a proof of claim (No. 148) in the amount of $2,300,407.05, as did GCOC–PT, a claim (No. 149) in the amount of $391,594.18.

Since the commencement of the Chapter 11 case, neither Johnson Blakely, Cummings & Lockwood nor CBH filed any subsequent disclosure statement regarding the disclosure of connections required by FRBP 2014(a) concerning their representation of insiders, affiliates or any other parties in interest. The first time this disclosure was made was when responses were filed to the Examiner's Report by Cummings & Lockwood, and a Motion for Summary Judgment, filed by Cummings & Lockwood concerning U.S. Trustee's Motion to Disgorge Compensation, which Motion was accompanied by an affidavit of Mr. Tatelbaum. In his response, Mr. Tatelbaum admitted that Cummings & Lockwood simultaneously represented GCOC, Dr. and Mrs. Bonati, and MDC who were involved in the medical malpractice suits and also in a malpractice action filed by the Debtor against a former attorney for GCOC. Mr. Tatelbaum also disclosed for the first time that Cummings & Lockwood received a postpetition retainer of $20,000 from MDC although this retainer was not disclosed when Cummings & Lockwood applied to be retained as co-counsel. Johnson Blakely admitted and conceded that the disclosure statement filed by Mr. Tatelbaum while he was a partner of Johnson Blakely did not comply with the requirements of FRBP 2014. No response has been filed to the disgorgement motion by CBH.

Based on the facts recited by the Examiner in his Report on November 1, 2000, the U.S. Trustee filed its Motion to join in the Motions filed by the Trustee. The Malpractice Creditors also filed their support for the Motions for Disgorgement and contend that the requirement of F.R.B.P. 2014(a) is mandatory, and under applicable law, a total forfeiture of all fees of all

entities who violated the Rule is automatic under the *per se* Rule.

On February 13, 2001, this Court entered an Order scheduling a hearing for February 20, 2001 at 1:30 p.m. The Order provided that the Court would hear oral argument limited to the issue of whether the professional's acknowledged failure to make disclosure of all of the debtor's professionals' connections with the Debtor, creditors, and any other party in interest as required by FRBP 2014 operates as a *per se* bar on the payment of compensation to such professionals, thereby requiring disgorgement of fees heretofore allowed and paid pursuant to orders of this Court. Both Johnson Blakely and Cummings & Lockwood filed their respective Motions for Summary Judgment directed only at the applicability, vel non, of the *per se* Rule. They contend that there are no genuine issues of material fact relevant to this limited issue and, based on these, they are entitled to a summary judgment in their respective favors as a matter of law.

Employment of professionals by the Debtor is governed by 11 U.S.C. § 327 and FRBP 2014 and allowance of compensation is governed by § 330. No professional can be employed who holds or represents an interest adverse to the estate and that is not a disinterested person. The term "disinterested" is defined by § 101(14)(A) of the Code as: "is not a creditor or an insider of a debtor." Bankruptcy Rule 2014 which governs employment of professional persons requires a disclosure by the professional to be employed to disclose the professional's connection with the debtor, creditors, any party of interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States Trustee. The application must be accompanied by a verified statement setting forth the person's connections with the debtor, creditors, any party of interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States Trustee.

The requirement of full disclosure and the consequences of failure to disclose have been frequently litigated, even prior to the adoption of the Code. The seminal case dealing with this subject was *Woods v. City Nat'l Bank & Trust Co.*, 312 U.S. 262, 61 S.Ct. 493, 85 L.Ed. 820 (1941). In this case the Supreme Court held that reasonable compensation to a professional in a bankruptcy case requires a loyal disinterested service by the professional seeking to be paid by the estate and compensation should be denied to a claimant who serves more than one master. The Court noted that it makes no difference whether fraud or unfairness actually resulted from the non-disclosure. Where there is actual conflict of interest no more needs to be shown to support the denial of all compensation. The Trustee concedes that Section 327(c) does not require disqualification for employment of the professional solely because such person's representation of a creditor unless there is an appropriate objection the Court should disapprove the employment if there is an actual conflict of interest.

Courts are generally in agreement that the Bankruptcy Code requires disapproval of all employment of professionals who are not disinterested and once the employment was authorized the Court must set aside the employment of the disqualified professional. *In re EWC, Inc.*, 138 B.R. 276 (Bankr.W.D.Okla.1992); *In re Rusty Jones, Inc.*, 134 B.R. 321 (Bankr.N.D.Ill. 1991). Several courts concluded that the Court must deny compensation for services performed during the conflict pursuant to Section 330(a), which permits allowance to officers of an estate. *Brown v.*

*Luker (In re Zepecki)*, 258 B.R. 719 (8th Cir. BAP 2001).

█ When considering allowance to a professional, one must initially consider whether the employment was authorized by the court. Clearly if the professional was not authorized to be employed it is not entitled to any compensation. From that it might logically follow that if the failure to disclose the relevant information rendered the authorization invalid, the professional would not be entitled to any compensation at all. The duty to disclose the professional's connection under FRBP 2014 is a mandatory requirement, and the scope of the disclosure is far broader than what is required for disqualification.

█ Under the Rule the applicant and the professional must disclose all connections, not merely those which rise to the level of conflict. *Halbert v. Yousif*, 225 B.R. 336 (E.D.Mich.1998); *In re Keller Financial Services of Florida, Inc.*, 243 B.R. 806 (Bankr.M.D.Fla.1999); *In re Granite Partners, L.P.*, 219 B.R. 22 (Bankr.S.D.N.Y.1998). These disclosure requirements are not discretionary and the duty of the professional to disclose all connections with the Debtor, Debtor–in–Possession, insiders, creditors or parties of interest is a must, including fee arrangements. In the case of *In re Keller Financial Services, supra*, violation of the disclosure rule alone was enough to disqualify a professional and deny all compensation and regardless whether the undisclosed connections or fee arrangements were materially adverse to the interest of the estate are insignificant. See also, *In re EWC, supra; In re Smitty's Truck Stop, Inc.*, 210 B.R. 844 (10th Cir. BAP 1997).

Several courts have held that the failure to disclose the relationships is sufficient in and of itself to require denial and disgorgement of all compensations separate and apart from any question that there was any actual conflict of interest. *In re Sky Valley, Inc.*, 135 B.R. 925 (Bankr. N.D.Ga.1992); *In re Western Office Partners, Ltd.*, 105 B.R. 631 (Bankr.D.Colo. 1989); *In re Kendavis Indus. Int'l, Inc.*, 91 B.R. 742 (Bankr.N.D.Tex.1988); *Diamond Lumber, Inc. v. Unsecured Creditors' Committee*, 88 B.R. 773 (N.D.Tex.1988).

█ Whether or not the failure to disclose is excused because it is claimed that it caused no harm to the estate was rejected by this Court in the case of *In re Florida Peach Corp. of America*, 110 B.R. 589 (Bankr.M.D.Fla.1990), which held that it is difficult to find any legal or moral support for the proposition that lack of harm to the estate excused the failure to make a required disclosure required by FRBP 2014(a). Inadvertent, unintentional or negligent failure to disclose does not vitiate the violation of the Rule. *Halbert v. Yousif*, 225 B.R. 336 (E.D.Mich.1998).

Johnson Blakely admits, as it must, that Mr. Tatelbaum was a head of the bankruptcy department of Johnson Blakely until June 1988. The firm of Johnson Blakely was counsel of record for GCOC. Mr. Tatelbaum, a highly experienced bankruptcy attorney who signed the Petition, did not disclose in his 2014 Statement and in the Affidavit when he applied for authorization to employ his law firm Johnson Blakely as counsel for GCOC as Debtor in Possession. As noted earlier, it is also without dispute that Johnson Blakely represented at the same time Dr. Bonati, his wife Patricia, his sister Ms. O'Ryan, DMC, the landlord of GCOC and GCOC–PT, and affiliates of GCOC. Dr. Bonati filed a Proof of Claim against GCOC, Claim No. 147 in the amount of $160,250. MDC filed a Proof of Claim No. 148 in the amount of $2,300.407.05, and GCOC–PT filed Claim No. 149 in the amount of $391,564.18. Thus, it is evident that Johnson Blakely

represented GCOC as DIP, and at the same time also represented not only insiders, but also creditors of the DIP.

Johnson Blakely, realizing that Mr. Tatelbaum's failure to make a full disclosure of the firm's connection with GCOC's affiliates, who were not only insiders of GCOC but also its creditors, contend first that everybody knew, or at least all the major players knew, particularly counsel for the Malpractice Claimants. Thus, they were fully aware of the nondisclosed connection of Johnson Blakely, and this is really much ado about nothing because this is a "no harm no foul" situation. Therefore, it would be improper to apply the *per se* Rule, and a total forfeiture and disgorgement of fees would not be warranted, citing *In re Prince*, 40 F.3d 356 (11th Cir. 1994). In *Prince*, the Eleventh Circuit, while approving a total forfeiture, emphasized ordering a forfeiture or disgorgement was not mandated; thus, there is no *per se* rule. The Court in *Prince* also stated that, "[i]n the absence of actual injury or prejudice to the debtor's estate, [the] action [of] denial of fees should not be rigidly applied." *In re Prince, 40 F.3d at 360.* The Court in *Prince* considered the definition of the term, "disinterested," and noted that Section 101(14) provides that a person is not disinterested who is possessing an economic interest that would tend to lessen the value of the estate or that would create either an actual or *potential* dispute in which the estate is a rival claimant. *Id.* at 361 (quoting) *Roger J. Au & Son Inc. v. Aetna Ins. Co.*, 64 B.R. 600, 604 (N.D.Ohio 1986). Adverse interest includes any interest or relationship, however slight, that would even faintly color the independence and an impartial attitude required by the Code and the Rules.

To further bolster the position of Johnson Blakely counsel for Johnson Blakely also contends first that the Examiner appointed by this Court during the pendency of the Chapter 11 case recommended the creation of a trust to be funded by the assets contributed by Dr. Bonati and its affiliates. He also recommended that the trust should be denied the opportunity to seek disgorgement from GCOC's attorneys and accountants, that Johnson Blakely relied on Mr. Tatelbaum and it was his responsibility to comply with the disclosure requirements of the Code and the Rules. After Mr. Tatelbaum left the Johnson Blakely firm and joined Cummings & Lockwood, that relying on Mr. Tatelbaum's competence was sufficient and there was no need to submit supplemental disclosures of the firm's connection with Dr. Bonati and GCOC affiliates. Lastly, while conceding there is no excuse for Mr. Tatelbaum's violation of the disclosure requirements, considering the benefits of the services rendered by Johnson Blakely during its representation would clearly make the application of the *per se* rule inappropriate.

In support of this proposition, counsel for Johnson Blakely contend there is no *per se* rule. It is not supported by the express language of the Code or by cases interpreting the consequences of violation of the disclosure requirement. Section 328(c) leaves no doubt that this section provides that the court "may deny" allowance of compensation for services and reimbursement of expenses of a professional if it develops during the representation that the professional is not disinterested or represents an adverse interest. According to Johnson Blakely this Section does not mandate a forfeiture or disgorgement, but merely permits this drastic sanction, and Rule 2014, which was also violated by Johnson Blakely, is silent concerning any sanctions for violation of the Rule.

There are several cases supporting the proposition that the Court has discretion when considering a violation of the disclosure requirement. The First Circuit in *Rome v. Braunstein*, 19 F.3d 54 (1st Cir. 1994) rejected to adopt a per se rule invariably requiring denial of all compensation pursuant to § 328(c). In the case of *Kravit, Gass & Weber, S.C. v. Michel (In re Crivello)*, 134 F.3d 831 (7th Cir.1998) in considering the requirement of employment of a professional under § 327 and the disclosure required by Rule 2014 and § 328(c), held that it is conceivable that even a professional who is not "disinterested" may provide services which are beneficial to the estate. The Court in *Crivello* also rejected the per se rule, which requires denial of all compensation even where the professional willfully failed to comply with the disclosure requirements.

The Ninth Circuit held that even a "literal" application of the disclosure requirements a failure to disclose "may" result in a denial of all fees requested when there is a failure to disclose. *In re Park–Helena Corp.*, 63 F.3d 877 (9th Cir.1995). While the Court approved the denial, it held that it was within the discretion of the bankruptcy court, especially because the failure to disclose was willful. In *Gray v. English*, 30 F.3d 1319 (10th Cir.1994), the Court stated that the denial of compensation and reimbursement of expenses after the services have been performed may be inherently unfair in the absence of any injury or prejudice to the estate and should not rigidly applied. *Id.* at 1324.

Thus it is evident from the authorities considered that by no means can one discern a consensus, which places this Court in a nonenviable position to make a choice between these diametrically opposing approaches.

 This Court is constrained to pragmatically accept the per se rule and is satisfied that notwithstanding the admitted and undisputed violation of Section 328(c) and especially FRBP 2014 in light of the history of this Chapter 11 case, it is more appropriate to consider all the relevant circumstances, including the bankruptcy experience of the professionals rather than to apply the per se rule. These comments should not be construed that the failure to comply with the disclosure requirement will be accepted on the claimed ground of "no harm no foul," a proposition which is totally unacceptable and rejected.

Based on the foregoing, this Court shall schedule forthwith a final evidentiary hearing for the purpose of receiving competent evidence on the remaining issue which is what type and what amount of sanctions would be appropriate based on the record established at the final evidentiary hearing.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that ruling be, and the same is hereby, deferred on all Motions, including Motions for Summary Judgment, relating to disgorgement pending the resolution of the remaining issues. It is further

ORDERED, ADJUDGED AND DECREED that a final evidentiary hearing be, and the same is hereby, scheduled before the undersigned to determine what sanctions would be appropriate under the facts of this case for the violation of Rule 2014(a) by Johnson Blakely Pope Bokor Ruppel & Burns, P A. and Cummings & Lockwood in Courtroom 9A, Sam M. Gibbons U.S. Courthouse, 801 N. Florida Avenue, Tampa, Florida 33602 on June 27, 2001 at 1:30 p.m.