In re William L. PRINCE, Debtor.

**ELECTRO–WIRE PRODUCTS, INC., Plaintiff–Appellant,**

v.

**SIROTE & PERMUTT, P.C., Defendant–Appellee.**

No. 93–7073.

United States Court of Appeals, Eleventh Circuit.

Dec. 20, 1994.

Lee R. Benton, Jerry W. Schoel, Melinda Murphy–Dionne, Schoel, Ogle, Benton & Centeno, Birmingham, AL, for appellant.

Barry A. Ragsdale, Birmingham, AL, for appellee.

Before COX, Circuit Judge, and FAY, Senior Circuit Judge, and CARNES *, District Judge.

* Honorable Julie E. Carnes, U.S. District Judge for the Northern District of Georgia, sitting by desig- nation.

FAY, Senior Circuit Judge:

This appeal addresses whether a law firm's prior representations and continuing connections to a bankruptcy debtor and to other parties in interest causes a conflict of interest which prejudices or harms the debtor's estate to the extent that the firm should be denied fees for its bankruptcy representation of the debtor. We hold that under the peculiar facts of this case it does.

## I. BACKGROUND

In August of 1986, the law firm of Sirote & Permutt, P.C. ("Sirote") began representing William L. Prince ("Prince") and Clara Inez Prince ("Mrs. Prince") in an estate planning context. John H. Cooper ("Cooper"), the Sirote attorney designated as the client contact for the Princes, assigned the Princes' estate planning work to another Sirote attorney, Judith F. Todd ("Todd"). Sirote was paid a total of $7,381.77 for Todd's estate planning work, $5,056.40 of which was paid to Sirote in October of 1989, within the 90–day period immediately preceding Prince's filing of a Chapter 11 bankruptcy case.

During the time relevant to this action, Sirote also represented Prince's company, PBR Electronics, Inc. ("PBR"), and Prince, individually. In September of 1986, Sirote began working on a divorce case for Prince, which was dismissed in April of 1989 after the Princes reconciled. In 1988, Sirote began performing corporate work for PBR, a corporation operated and controlled by Prince. Both of the Princes owned stock in PBR, however Mr. Prince owned the vast majority (85%).

On June 6, 1989, five months before Prince filed his Chapter 11 suit, Todd's estate planning work for the Princes resumed and approximately $600,000 in property was conveyed from Mr. Prince to Mrs. Prince for no valuable consideration. The property deeds executed by Prince in this property transfer remained in Sirote's files and were not recorded until October 17, 1989, approximately one month prior to Prince's Chapter 11 filing. Sirote mailed a $212.86 bill to Prince for deed recording costs on November 27, 1989.

On November 28, 1989, Prince, represented by Jack Caddell, an attorney not associated with the Sirote firm, filed a voluntary Chapter 11 petition in the United States Bankruptcy Court for the Northern District of Alabama. In December of 1989, Prince paid Sirote the $212.86 bill owed for the deed recordings work.

In March of 1990, Prince called Cooper at Sirote and asked if Sirote had a "good bankruptcy lawyer." Cooper referred Prince to Robert B. Rubin, the head of Sirote's bankruptcy department at the time. Cooper then asked Todd to prepare a memorandum outlining the estate planning work she had done for the Princes and the effect it might have on Prince's bankruptcy proceedings. In her memorandum to Cooper, Todd wrote:

> You should also be aware that we did accomplish a transfer of real estate to his wife giving her assets equal to approximately $600,000 in her sole name. Whether these could be set aside as a fraud on creditors, I am not in a position to answer.

On March 6, Prince met with Cooper and Rubin. After this meeting, Caddell filed a Motion to Withdraw as Prince's attorney. On April 20, 1990, Prince filed an Application for Approval of Employment of the Sirote firm in his Chapter 11 case. Accompanying the application in a sworn Bankruptcy Rule 2014 affidavit, Rubin, on behalf of Sirote, stated:

> The undersigned, members and associates of the Firm of Sirote & Permutt, P.C. have no connection with the Debtor, any creditor of the Debtor or any other party in interest, their respective attorneys and accountants, other than the undersigned who has been recently introduced to the Debtor for the purposes of representation of the Debtor in a case under Title 11 of the United States Code. The Undersigned, nor the Firm of Sirote & Permutt, P.C. have not formerly represented the Debtor and do not presently represent any party in interest in the case and to best of the undersigned's knowledge is otherwise qualified to serve in the capacity as attorney for the Debtor pursuant to 11 U.S.C. § 327.

Neither the application for employment nor Rubin's affidavit reflected Sirote's representation of the Debtor, his spouse, or his corporation; Sirote's participation in the transfer of $600,000 of the Debtor's assets to his wife; Sirote's receipt of $5,056.40 in payment of an antecedent debt during the 90–day period preceding the Debtor's bankruptcy filing; or Sirote's receipt of payment of the $212.86 prepetition debt after the filing of the Debtor's Chapter 11 case. The bankruptcy court approved the employment of Sirote on April 23, 1990.

Sirote further represented Mrs. Prince during the pendency of Mr. Prince's Chapter 11 case when Electro–Wire Products, Inc. ("EWP") brought suit against Mrs. Prince on a guaranty executed in favor of EWP in the United States District Court for the Northern District of Alabama. Sirote filed an answer on behalf of Mrs. Prince and obtained a stay of that proceeding because of the pendency of Mr. Prince's bankruptcy case.

Sirote filed two amendments to its application for employment. The first amendment stated that Sirote inadvertently had failed to disclose its performance of estate planning services for Mr. Prince, that those services had concluded in 1988, and that the services had no material effect or impact upon the bankruptcy proceedings. In its second amendment, Sirote attested that it inadvertently had failed to disclose its previous representation of Mr. Prince in other matters unrelated to his bankruptcy proceedings. In its second amendment Sirote also disclosed that it had represented *both* Mr. Prince and Mrs. Prince in the estate planning work performed by Todd.

On October 22, 1991, the bankruptcy court granted Sirote's Motion to Withdraw as Prince's counsel. Sirote filed its Application for Final Compensation on March 6, 1992.

After conducting hearings on Sirote's application for compensation and EWP's objections thereto, the bankruptcy court approved fees for Sirote in the amount of $98,589.42. The district court affirmed the bankruptcy court's fee award and increased the award amount to $199,293.52. EWP then filed this appeal.

## II. STANDARD OF REVIEW

We review the district court's factual findings for clear error. Fed.R.Civ.P. 52(a); *Anderson v. Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d.518 (1985); *Newell v. Prudential Ins. Co.,* 904 F.2d 644, 649 (11th Cir.1990). We subject the district court's legal conclusions to *de novo* review. *Newell,* 904 F.2d at 649. This Court reviews the district court's award of attorneys' fees for an abuse of discretion. *Holywell Corp. v. Smith (In re Holywell Corp.)* 967 F.2d 568, 571 (11th Cir.1992). "An abuse of discretion occurs if the judge fails to apply the proper legal standard or to follow proper procedures in making the determination, or bases an award upon findings of fact that are clearly erroneous." *Hatcher v. Miller (In re Red Carpet Corp. of Panama City Beach)* 902 F.2d 883, 890 (11th Cir. 1990), *citing In re Beverly Mfg. Corp.,* 841 F.2d 365, 369 (11th Cir.1988).

## III. DISCUSSION

We agree with the district court that a bankruptcy judge's discretion in awarding compensation for services performed during bankruptcy proceedings deserves great deference. *See In re Holywell Corp.,* 967 F.2d at 571; *In re Red Carpet Corp. of Panama City Beach,* 902 F.2d at 890. We also agree with both the district court and bankruptcy court that the language of 11 U.S.C. § 328(c) *permits* a court to deny compensation to professionals found not to be disinterested persons, but does not *require* a denial of fees in those instances. The relevant language of § 328(c) reads:

> Except as provided in section 327(c), 327(e), or 1107(b) of this title, the court **may** deny allowance of compensation for services and reimbursement of expenses of a professional person employed under section 327 or 1103 of this title if, at any time during such professional person's employment under section 327 or 1103 of this title, such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the

estate with respect to the matter on which such professional person is employed.

11 U.S.C. § 328(c) (emphasis added).

The permissive nature of the language in § 328(c) is clear. *See Gray v. English,* 30 F.3d 1319, 1324 (10th Cir.1994) *citing* Sen. Rep. No. 95–989, 1978 U.S.Code Cong. & Admin.News 5787, 5825. And, "[i]n the absence of actual injury or prejudice to the debtor's estate, this sanction [denial of fees] should not be rigidly applied." 2 Collier on Bankruptcy 328.04 at 328–34 (15th ed. 1994) (footnote omitted). When injury to the debtor's estate occurs, however, denial of fees is proper. The Tenth Circuit Court of Appeals recently stated in another bankruptcy fee compensation case that "[i]n exercising the discretion granted by the statute we think the [bankruptcy] court should lean strongly toward denial of fees, and if the past benefit to the wrongdoer fiduciary can be quantified, to require disgorgement of compensation previously paid that fiduciary even before the conflict arose." *Gray,* 30 F.3d at 1324. We agree.

 The egregious facts of this case demonstrate that the conflicts of interest which Sirote labored under clearly prejudiced the Debtor's estate. By representing Prince in his bankruptcy proceedings, Sirote deprived Prince of a conflict-free, impartial, independent evaluation of the potential claims of and against his estate. The most obvious prejudice to the Debtor is Sirote's inability to independently evaluate the $600,000 property transaction between Prince and Mrs. Prince and its possible effect on Prince's estate. Whether a conflict-free bankruptcy lawyer would have attacked the transaction as a fraudulent conveyance is impossible for us to know.[1] As the Supreme Court noted over half a century ago:

[t]he incidence of a particular conflict of interest can seldom be measured with any degree of certainty. The bankruptcy court need not speculate as to whether the result of the conflict was to delay action where speed was essential, to close the record of past transactions where publicity and investigation were needed, to compromise claims by inattention where vigilant assertion was necessary, or otherwise to dilute the undivided loyalty owed to those whom the claimant purported to represent. Where an actual conflict of interest exists, no more need be shown in this type of case to support a denial of compensation.

*Woods v. City National Bank & Trust Co.,* 312 U.S. 262, 268, 61 S.Ct. 493, 497, 85 L.Ed. 820 (1940). The accurate measure of prejudice here is not what Sirote actually did or did not do in handling Prince's case, but rather whether Sirote could have unbiasedly made decisions in the best interest of its client. We think it could not.

 The purpose of section 327(a) of Title 11 of the United States Code is to ensure impartiality in bankruptcy representation. *See In re Roberts,* 46 B.R. 815, 826–27 (Bankr.D.Utah 1985). Section 327 states, in part:

Except as otherwise provided in this section, the trustee[2], with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a) (footnote added).

The definition of a "disinterested person" includes a person that "(A) is not a creditor ..." and "(E) does not have an interest materially adverse to the estate ... by reason of any direct or indirect relationship to,

---

1. Appellee's counsel argued in his brief and at oral argument that because the Debtor's new counsel had not pursued this claim, the claim must be meritless and therefore Sirote's failure to pursue the claim caused no harm or prejudice to the Debtor's estate. Appellee's Brief at 22. At oral argument, however, appellant's counsel advised that a settlement had been reached as between Mrs. Prince and EWP. Because we find Sirote's inability to independently evaluate

claims for its client, not its failure to pursue claims, is the actual prejudice to the Debtor, we find this discussion of interest but not controlling.

2. The chapter 11 debtor in possession exercises the rights and powers of a chapter 11 trustee under § 327 by virtue of 11 U.S.C. § 1107(a).

connection with, or interest in, the debtor ..., or for any other reason." 11 U.S.C. § 101(14). The phrase "interest materially adverse to the estate" is not defined by the Bankruptcy Code. Other courts, however, have defined the phrase as follows:

> holding or representing an interest adverse to the estate as possessing, or serving as an attorney for a person possessing, either an 'economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant ... or ... a predisposition under the circumstances that render such a bias against the estate.'

*Roger J. Au & Son, Inc. v. Aetna Ins. Co.*, 64 B.R. 600, 604 (N.D.Ohio 1986) (quoting *In re Roberts*, 46 B.R. at 822–23). Sirote cannot possibly qualify as a "disinterested person" under the facts of this case. Sirote was a creditor of the Debtor, albeit for a relatively small amount, and Sirote's representation of Mrs. Prince is undeniably an interest adverse to the Debtor's estate. Whether Sirote inadvertently or intentionally neglected to inform the court of its conflicts is of no import.[3] If the actions of the Sirote firm in this case had been performed by a sole practitioner, disbarment proceedings would undoubtedly have ensued. Law firms, no matter their size, must ensure that their representations do not result in irreconcilable, intolerable conflicts that can only result in harm to their clients, as in this case.

In this instance, Sirote was in the unfortunate position of having to serve too many masters. "Where a claimant, who represented members of the investing public, was serving more than one master or was subject to conflicting interests, he should be denied compensation. It is no answer to say that fraud or unfairness were [sic] not shown to have resulted." *Woods*, 312 U.S. at 268, 61 S.Ct. at 497. The conflicts Sirote operated

under push the limits of discretion to the extreme. Because Sirote could not have adequately and impartially served its client under the circumstances of this case, the bankruptcy court's award of fees was improper.

■■■■ While a bankruptcy judge's discretion in deciding compensation cases under section 328 enjoys great bounds, it is not unlimited. A finding that Sirote qualifies for fees in this case would render the impartiality requirements of the Bankruptcy Code meaningless. While a complete denial of fees may be extreme in some instances, this case requires nothing less. "This sanction serves to deter future wrongdoing by those punished and also to warn others who might consider similar defalcations." *Gray*, 30 F.3d at 1323. Accordingly, we find that the district court's affirmance of the bankruptcy court's award of fees constitutes an abuse of discretion. *See Neville v. Eufaula Bank & Trust Co. (In re U.S. Golf Corp.)*, 639 F.2d 1197, 1201 (5th Cir.1981).

## IV. CONCLUSION

For the foregoing reasons, we find that the law firm of Sirote & Permutt, P.C. is not entitled to compensation for its work in representing Prince in his bankruptcy proceedings because the firm operated under intolerable conflicts of interest which unduly prejudiced the Debtor in violation of the Bankruptcy Code. Because we find that the firm is not entitled to fees or expenses, it is unnecessary for us to address the district court's expansion of the bankruptcy court's fee award.

We VACATE the district court's decision and REMAND this case with instructions that Sirote be denied all fees and expenses for services it rendered in connection with Prince's bankruptcy proceedings and that

---

**3.** This Court, however, is aware that this is not the first time Mr. Rubin's thoroughness in disclosure has been called into question. *See In re Estes*, 57 B.R. 158 (Bankr.N.D.Ala.1986). In *Estes*, the bankruptcy judge noted that statements made by Rubin "merely indicate counsel's attitude toward the congressional restriction imposed by 11 U.S.C. § 327(a) which seems to be that of casually dealing with a prosaic and bothersome provision or nuisance regarding employment of professional persons by bankruptcy trustees or chapter 11 debtors in possession." *Id.* at 161.

any such fees or expenses received by the firm to date be disgorged *in toto.*

VACATED and REMANDED.