**In re ANGELIKA FILMS 57TH, INC., Debtor.**

**Tenzer Greenblatt LLP, Appellant,**

**v.**

**Kenneth P. Silverman, as Chapter 11 Trustee For Angelika Films 57th, Inc., Debtor and Angelika Film Centers, Inc., Appellee.**

**Nos. 96–B–41643(AJG), 99–CV–1239(RMB).**

United States District Court, S.D. New York.

March 24, 2000.

---

---

### *ORDER*

BERMAN, District Judge.

#### *Background*

This is an appeal from the denial (in its entirety) of the application for legal fees

and expenses of Tenzer Greenblatt LLP[1] ("Tenzer" or "Appellant"), counsel for Angelika Films 57th, Inc. ("Debtor" or "Angelika Films"), by the United States Bankruptcy Court for the Southern District of New York (Gonzalez, J.). The Bankruptcy Court found that Tenzer was not disinterested at the time of its retention; alternatively, the Bankruptcy Court found that Tenzer lost its disinterestedness during the pendency of the bankruptcy proceeding in connection with the filing of a certain motion on January 31, 1997 which placed the interests of the Debtor's principal, Joseph Saleh ("Saleh"), over those of the Debtor.[2] **For the reasons set forth below, the decision of the Bankruptcy Court is affirmed.**

### Standard of Review

"[A] bankruptcy judge's discretion in awarding compensation for services performed during bankruptcy proceedings deserves great deference." *In re Prince,* 40 F.3d 356, 359 (11th Cir.1994). *See also In re Martin,* 817 F.2d 175, 182 (1st Cir. 1987) ("[h]istorically, bankruptcy courts have been accorded wide discretion in connection with fact-intensive matters . . .)." Fee awards will not be disturbed absent an abuse of discretion. *In re Prince,* 40 F.3d at 359. " 'An abuse of discretion occurs if the judge fails to apply the proper legal standard or to follow proper procedures in making the determination, or bases an award upon findings of fact that are clear-

---

1. The firm is now called Blank Rome Tenzer Greenblett LLP.

2. The Debtor, which is controlled by Saleh, operated a single screen movie theater and concession stand in Manhattan. The Debtor leased the property from Circle Properties Associates. The lease was the Debtor's primary asset. On January 31, 1997, the Debtor filed a motion to assume the lease and assign it to Saleh ("Motion to Assign") under a Lease Purchase Agreement ("Agreement"). The Agreement provided, among other things, for the sale of the lease to Saleh for $100,000. On March 6, 1997, the Bankruptcy Court denied the Debtor's Motion to Assign on the grounds that it was not filed in good faith. The Bankruptcy Court stated that it "based its finding regarding good faith, in part, on the

---

ly erroneous.' " *Id.* (citations omitted). "Notwithstanding, however, if the decision below is correct, it must be affirmed, although the lower court relied upon a wrong ground or gave a wrong reason." *In re JLM, Inc.,* 210 B.R. 19, 23 (2d Cir. BAP 1997) (citations omitted) (quotations omitted). "The bankruptcy judge is on the front line, in the best position to gauge the ongoing interplay of factors and to make the delicate judgment calls which such a decision entails." *In re Martin,* 817 F.2d at 182.

### Analysis

In its Memorandum of Decision Regarding Application of Tenzer Greenblatt LLP for First and Final Allowance of Compensation for Services Rendered, dated November 9, 1998 ("Bankruptcy Court Opinion"), the Bankruptcy Court found and ruled as follows:

> At a hearing on the final applications for allowance of compensation and reimbursement of expenses, the Court questioned the disinterestedness of counsel based upon certain actions it took which resulted in the filing of a motion to assume and assign the lease to the debtor's principal at a price of $100,000, a price that was substantially below what counsel had, a few days earlier, claimed was the market value of the lease. Based on the conduct of counsel, the Court finds that from the inception of

---

fact that the purchase of the lease for $100,000 was proposed only four days after Debtor's counsel [Tenzer] represented it was worth at least $500,000. The Court also held that . . . Mr. Saleh's offer was so low that it could adversely affect the bidding and reduce the ultimate return to the estate at an auction." (A1969). At an auction held on July 10, 1997, the lease was sold for $1 million. (Tenzer's Moving Br. at 11).

Tenzer argued that it filed the Motion to Assign for the purpose of "eliciting competitive bidding on Angelika's major asset." (Tenzer's Moving Br. at 38). On appeal, the District Court (Mukasey, J.) affirmed the Bankruptcy Court decision, stating that Tenzer's conduct "reeked of bad faith." (A1061).

the case counsel was not disinterested and represented an interest adverse to the estate, thereby disqualifying it from representing the debtor. Alternatively, even if debtor's counsel was qualified to represent the debtor at the commencement of the case, because of counsel's failure to avoid conflicts of interest, the Court finds that counsel lost its disinterestedness and represented an interest adverse to the estate at the time it filed a motion to assume and assign the lease to the debtor's principal. Under either alternative finding, the Court disallows the entire request for compensation and reimbursement of expenses for services rendered by debtor's counsel.

(A1963–64).[3] In so holding, the Bankruptcy Court exercised its discretion pursuant to 11 U.S.C. § 328(c).[4] (A1988).

The Court has reviewed (i) the Bankruptcy Court Opinion; (ii) the parties' written submissions; (iii) the Record on Appeal; and (iv) relevant legal authorities.[5] Upon such review, and having heard oral argument on March 1, 2000, the Court finds that the Bankruptcy Court Opinion is based upon extensive findings of fact (supported by the record and not clearly erroneous) and a thorough (and accurate) analysis of the law.

█ Section 328(c) provides, in relevant part, as follows:

> ... the court may deny allowance of compensation for services and reimbursement of expenses of a professional person employed under section 327 or 1103 of this title if, **at any time** during such professional person's employment under section 327 or 1103 of this title, such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed.

11 U.S.C. § 328(c) (emphasis added). Thus, it is clear that if counsel ceases to be disinterested at any time during its representation of the debtor, the bankruptcy court may deny **all** compensation and expenses. *See, e.g., Gray v. English,* 30 F.3d 1319, 1324 (10th Cir.1994) ("[i]n exercising the discretion granted by [§ 328(c)] we think the court should lean strongly toward denial of fees, and if the past benefit to the wrongdoer fiduciary can be quantified, to require disgorgement of compensation previously paid that fiduciary even before the conflict arose"); *In re Office Products of America, Inc.,* 136 B.R. 983, 986 (Bankr.W.D.Tex.1992) ("[e]ven if Gresham, Davis began as a 'disinterested person,' then, compensation for Gresham, Davis' services might be denied if, at any time during its employment by the debtor-in-possession, the law firm ceased to be 'disinterested' or came to represent an interest adverse to the estate"); *In re Martin,* 817 F.2d at 182–83 ("[i]f the [bankruptcy judge] perceives a materially adverse interest, he has at his disposal an armamentarium of permissible remedies, including (but by no means limited to) disqualification, disallowance of some or all fees ..."); *In re CIC Investment Corp.,* 192 B.R. 549, 553 (9th Cir. BAP 1996) ("[i]n a case such as this, where a professional's employment was approved by the bankruptcy court after full disclosure of all potential conflicts, we hold that subsequent denial of compensation for the professional's failure to be disinterested is

---

3. "A___" refers to the page number of the Appellant's Appendix of Record on Appeal.

4. In connection with the Bankruptcy Court's hearing on the issue of Tenzer's disinterestedness, the U.S. Trustee for the Southern District of New York filed a Statement dated February 16, 1998, stating that "the record makes clear that Tenzer Greenblatt advocated positions that were adverse to the interests of this estate." (A1784).

5. The Appellee, Kenneth P. Silverman, as Chapter 11 Trustee for the Debtor, submitted a brief "for the purpose of providing the Court with an overview of the governing legal principles and does not take any position with regard to the decision and the order of the Bankruptcy Court." (Appellee's Brief at 1).

within the court's discretion"). *Cf. In re Tidewater Memorial Hosp., Inc.*, 110 B.R. 221, 229 (Bankr.E.D.Va.1989) (denying compensation even though there was "[n]o doubt the law firm performed valuable services in the chapter 11 case ...*"). Even those bankruptcy courts which ultimately mete out a less severe sanction concede that it is within their discretion to deny all fees. *See In re Leslie Fay Companies, Inc.*, 175 B.R. 525, 538 (Bankr. S.D.N.Y.1994) (the court could impose "a monetary sanction which could be as large as the disgorgement of all fees ...").

■ As reflected in the Bankruptcy Court Opinion, the record clearly supports the Bankruptcy Court's finding that Tenzer ceased to be disinterested at the time it filed the Motion to Assign. Indeed, when the matter was presented to the District Court, Judge Mukasey stated in affirming the Bankruptcy Court's denial of the Debtor's Motion to Assign the following:

> Here, given that Saleh is [Debtor's] sole principal, and given the circumstances which gave rise to the assignment motion, which **reeked of bad faith**—including that [Debtor] did not tell the Bankruptcy Court a mere four days before it was planning on assigning the lease to its sole principal—the Court could find that there was **fraud or collusion** between [Debtor] and Saleh, and that [Debtor] filed the assignment motion **solely for Saleh's benefit** and to avoid the appointment of a trustee.

(A1061) (emphasis added).

■ The Court recognizes that the sanction imposed by the Bankruptcy Court is severe. In hindsight, it would have been appropriate for the Bankruptcy Court to nip the problem in the bud; at an early stage in the bankruptcy proceedings, the Bankruptcy Court was "aware of the difficulties inherent in a situation where the principal of the Debtor and the Debtor are represented by the same counsel." [6] (A1990). Compliance with the disinterestedness requirements of the Bankruptcy Code is critical at the time of retention, but also throughout the case "and is so crucial to the proper functioning of the bankruptcy system that a court may raise it and dispose of it whenever its sanctity is questioned." *In re Vebeliunas*, 231 B.R. 181, 187 (Bankr.S.D.N.Y.1999). *See also Rome v. Braunstein*, 19 F.3d 54, 58–59 (1st Cir.1994) ("[appellant] argues that retroactive disqualification is inequitable in these circumstances, since the bankruptcy court and the trustee tacitly endorsed his representation of Leavitt and Dickerman, pendente lite, or, at the very least, voiced no objection until the filing of his application for compensation in December 1991. Given the relevant findings in this case, however, we are not swayed by [appellant's] resort to general notions of equity"). The Bankruptcy Court must be ever vigilant in this regard. *See In re Plaza Hotel Corp.*, 111 B.R. 882, 891 (Bankr.E.D.Cal. 1990) ("the court's continuing supervisory role during the case includes the ability to revisit such issues as conflicts whenever appropriate" and "the court must be prepared to revoke its approval if circum-

---

**6.** Tenzer disclosed in its retention application that it was already representing the Debtor in a related matter "and representing Joseph Saleh in several personal matters, including his matrimonial dispute." (A1965). Parties to the bankruptcy proceeding initially objected to Tenzer's retention, arguing that Tenzer was not disinterested (*Id.*); however, in May 1996, the parties agreed to Tenzer's retention as Debtor's counsel. (*Id.*). The Bankruptcy Court acknowledged that it initially "approved Tenzer's retention because Tenzer had disclosed its relationship with Joseph Saleh and had resolved all the objections to its proposed retention. In addition, although aware that a potential conflict of interest existed, the Court believed that Tenzer recognized its obligation to represent the interests of the Debtor and that it would take appropriate actions to ensure that the Debtor's interests were protected if the interests of the Debtor and Mr. Saleh diverged. In reliance on Tenzer pursuing the appropriate course, the Court approved its retention. The facts establish that the Court's reliance was misplaced." (A1980).

stances so dictate").[7]

■ In light of: (i) the fact that the Bankruptcy Judge is in the best position to gauge the ongoing interplay of factors relevant to the determination of disinterestedness; (ii) the Bankruptcy Judge's wide discretion in formulating permissible remedies; and (iii) the Bankruptcy Court's supportable findings of fact and accurate analysis and application of the law; this Court will not disturb the Bankruptcy Court's ruling.[8]

### Conclusion

For the foregoing reasons, the Bankruptcy Court's Opinion is affirmed.

---

7. The Court also finds it unfortunate that the Bankruptcy Court did not take appropriate action as soon as the Motion to Assign was denied.

8. "The inquiry is not focused on whether the appellate court might have ruled differently if presented with the same evidence, but whether there is a reasonable basis in the record to support the propriety of the bankruptcy judge's decision." *In re JLM, Inc.*, 210 B.R. at 23.