**In re GRIEB PRINTING CO., INC., Debtor.**

**No. 98–30775(2).**

United States Bankruptcy Court, W.D. Kentucky.

July 14, 2003.

Thomas V. Askounis, Chicago, IL, David B. Blandford, Louisville, KY, James S. Goldberg, Ogden, Newell & Welch PLLC, Louisville, KY, Patricia Tierney Kidd, T. Lawson McSwain, II, Stephanie R. Miller, Louisville, KY, Allen L. Morris, Stites & Harbison, Jeffersonville, IN, John David Myles, Shelbyville, KY, Dennis M. Ostrowski, Alton D. Priddy, Fred R. Simon, Karen L. Stewart, Louisville, KY, for creditors.

Scott J. Goldberg, Louisville, KY, U.S. Trustee.

Jerry O. Payne, Louisville, KY, for debtor.

John Baxter Schilling, Louisville, KY, trustee.

### MEMORANDUM–OPINION

THOMAS H. FULTON, Bankruptcy Judge.

THESE CORE PROCEEDINGS are before the Court on two related Motions: (1) the Chapter 7 Trustee's Motion for the

Court to determine whether the legal representation by J. Baxter Schilling ("Schilling") of his clients, Michael Heideman and other Heideman family members and estates (collectively, "Heideman"), in *In re Louisville Manufacturing Company, Inc.*, Case No. 98–32866 (W.D. Ky.) (the "LMC Bankruptcy") conflicts with Schilling's statutory and ethical duties as Trustee in this case; and (2) the Motion of the United States Trustee (the "UST") for the Court to determine whether a conflict of interest exists by reason of Schilling's representation of Heideman and, if so, to require Schilling, in his capacity as the Trustee and the Trustee's attorney to disgorge compensation paid him in this case and also to disgorge compensation paid Schilling as counsel to Heideman in the LMC Bankruptcy.

For the reasons set forth below, the Court finds that Schilling's representation of Heideman in the LMC Bankruptcy while acting as Trustee and the Trustee's attorney in this case constitutes an impermissible conflict of interest. Accordingly, the Court has entered separate Orders addressing each Motion directing that (1) Schilling's compensation as the Trustee's attorney be reduced by $11,075.46, the amount of fees paid to him by Heideman for his representation in the LMC Bankruptcy; (2) Schilling's compensation as the Trustee in this case be calculated without reference to the amounts by which Schilling's compensation as the Trustee's attorney is reduced pursuant to the foregoing, i.e., such amounts shall not be included in the total disbursements used to calculate the Trustee's percentage fee in this case; and (3) Schilling shall be disqualified from serving further as the Trustee's attorney in this case and as attorney for Heideman in the LMC Bankruptcy.

## Background

The Debtor in this case filed its Chapter 7 petition on February 17, 1998, and Schill-

ing was appointed Trustee in this case on February 18, 1998. On March 10, 1998, Schilling applied to employ himself as the Trustee's attorney. The application under 11 U.S.C. § 327(a) was approved by Order dated April 22, 1998.

The debtor in the LMC Bankruptcy filed a Chapter 11 petition on May 22, 1998. On June 16, 1998, Schilling, in his capacity as the Trustee in this case, filed a proof of claim in the LMC Bankruptcy for goods sold in the amount of $2,369.00. The LMC Bankruptcy was subsequently converted to a case under Chapter 7 on March 29, 2000. Michael Wheatley (the "LMC Trustee") was appointed trustee in the LMC Bankruptcy at that time.

On February 5, 2002, the LMC Trustee made a Motion to take a Rule 2004 examination of Michael Heideman. This Motion was approved by Order dated February 8, 2002. One of the issues to be explored in the examination was whether certain insurance proceeds properly belonged to the LMC Bankruptcy estate or Heideman.

At some point between February 8, 2002, and February 20, 2002, Michael Heideman contacted Schilling to request that Schilling represent him with respect to the Rule 2004 examination. As is Schilling's standard practice, rather than engaging in a formal conflict of interest check using a recorded database of prior client representations, Schilling relied upon his memory to determine whether he was already representing an adverse interest. Schilling failed to remember that a current client, the Grieb estate, had previously filed a proof of claim in the LMC Bankruptcy.

Schilling met with Michael Heideman on February 20, 2002, and received a check for $1,000.00 dated February 22, 2002. On February 28, 2002, Schilling appeared with Michael Heideman at the Rule 2004 exami-

nation, at which Schilling turned over certain documents to the LMC Trustee but directed his client not to testify on grounds that the LMC Trustee's attorney had an existing lawyer-client relationship with Michael Heideman. Schilling subsequently received compensation in the amount of $1,866.29 from Michael Heideman by check dated March 10, 2002.

On May 31, 2002, the LMC Trustee objected to several claims of Heideman as creditors in the LMC Bankruptcy. Schilling met with Michael Heideman on June 18, 2002; and on June 20, 2002, Schilling filed a response to the LMC Trustee's objections on Heideman's behalf. Thereafter, Schilling continued to represent Heideman in the LMC Bankruptcy, receiving payments in the amounts set forth herein for such representation by checks dated July 23, 2002 ($1,043.04), November 30, 2002 ($4,390.80), December 9, 2002 ($829.50) and January 21, 2003 ($1,945.83).

In October 2002, while reviewing the claims filed in the LMC Bankruptcy, the LMC Trustee realized that Schilling had filed a proof of claim on behalf of the Grieb estate in addition to representing Heideman. The LMC Trustee's attorney then contacted Schilling regarding this apparent conflict of interest by letter dated October 29, 2002.[1] On October 30, the Trustee filed his instant Motion and the UST responded on November 15, 2002. The UST's instant Motion followed on November 22, 2002.

### Analysis

 Based on the record of this case, the Court believes that Schilling's representation of Heideman while acting as attorney for the Trustee in this case constitutes a conflict of interest justifying at least partial denial of compensation to him in his capacity as the Trustee and the Trustee's attorney pursuant to 11 U.S.C. § 326(d) and 11 U.S.C. § 328(c), respectively.

11 U.S.C. § 326(d) states:

The court may deny allowance of compensation for services or reimbursement of expenses of the trustee if the trustee failed to make diligent inquiry into facts that would permit denial of allowance under section 328(c) of this title or, with knowledge of such facts, employed a professional person under section 327 of this title.

11 U.S.C. § 328(c) states:

Except as provided in section 327(c), 327(e), or 1107(b) of this title, the court may deny allowance of compensation for services and reimbursement of expenses of a professional person employed under section 327 or 1103 of this title if, at any time during such professional person's employment under section 327 or 1103 of this title, such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed.

Clearly, at the time in February 2002 that Schilling agreed to represent Heideman, he undertook advocating Heideman's interests with respect to the LMC Bankruptcy, which included supporting Heideman's contention that certain insurance funds belonged to Heideman and not the LMC Bankruptcy estate.[2] To the extent

---

1. Schilling has attempted to show that the UST is selectively challenging perceived conflicts of interest, essentially ignoring other conflicts while focusing on Schilling. Whether this is true is irrelevant to the fundamental issue here-whether Schilling engaged in pro-hibited conduct. The Court makes no finding regarding the UST's motives in this matter.

2. Schilling attempts to draw a distinction between his representation of Heideman with respect to the Rule 2004 examination in Feb-

that the Heideman position prevailed, there would be less available to the creditors of LMC, including the Grieb estate. Thus, at the moment that Schilling agreed to represent Heideman in February 2002, he lost the ability to make unbiased decisions in the best interest of the Grieb estate. *See Electro–Wire Products, Inc. v. Sirote & Permutt, P.C.,* 40 F.3d 356 (11th Cir.1994) The Court in *Electro–Wire Products* stated: "The accurate measure of prejudice here is not what Sirote actually did or did not do in handling Prince's case, but rather whether Sirote could have unbiasedly made decisions in the best interest of its client. We think it could not." *Electro–Wire Products* 40 F.3d at 360. As of February 2002, then, Schilling represented "an interest adverse to the interest of the estate [Grieb] with respect to the matter on which such professional is employed." *11. U.S.C. 328(c).* Schilling the attorney was therefore subject to sanction under 11 U.S.C. 328(c).

By the same token, Schilling the Trustee became subject to sanction under 11 U.S.C. § 326(d) when he permitted Schilling the attorney to undertake representation of Heideman. Schilling the Trustee should have known that Schilling the attorney had filed an adverse claim in the LMC Bankruptcy on behalf of the Grieb estate. Schilling the Trustee and Schilling the attorney are, of course, the same person. Furthermore, it is no valid excuse for Schilling to say that he had forgotten about the Grieb claim. 11 U.S.C. § 326(d)

presupposes "diligent inquiry" by the Trustee. Indeed, Schilling should already have been on guard against conflicts for his alter ego, the Trustee. Having undertaken to represent the Grieb estate, Schilling the attorney had an ethical duty under Kentucky's rules of professional conduct for attorneys to pursue the Grieb estate's interests with competence and diligence. *Ky. Sup.Ct. R. 3.130(1.1) and 3.130(1.3).* Schilling the attorney also had a duty to avoid conflicts of interest. *Ky. Sup.Ct. R. 3.130(1.7).*

Schilling failed in his duties because he maintains no formal method of reviewing current representations to determine whether new representations a conflict of interest. He relies on his memory and, because he is human, his memory is not perfect. In this case, his memory failed him and he accepted representation of clients with interests directly adverse to an existing client. There is no valid excuse for this in this time of technological innovation. Schilling cannot avoid the natural consequences of his acts and omissions under these circumstances. The Court strongly recommends that Schilling implement a conflict check system as quickly as possible lest he repeat his mistake here. As stated in *Electro–Wire Products:* "Law firms, no matter their size, must ensure that their representations do no result in irreconcilable, intolerable conflicts that can only result in harm to their clients, as in

ruary 2002 and his representation of Heideman with respect to the LMC Bankruptcy Trustee's objection to the Heideman claims in June 2002. He argues that his representation of Heideman only became adverse to creditors of the LMC Bankruptcy estate when the LMC Bankruptcy Trustee filed a formal objection to certain claims of Heideman as creditors of the LMC Bankruptcy estate. The Court sees no justification for so bifurcating Schilling's representation of Heideman.

Schilling has provided no evidence that he and Heideman agreed that Schilling's initial representation of Heideman in the LMC Bankruptcy would be limited in any way. Even if Schilling's initial representation of Heideman was expressly limited to the Rule 2004 examination, that representation was clearly adverse to the interests of the Grieb estate in that it supported a competing claim for the disputed insurance proceeds.

this case." *Electro–Wire Products, Inc. v. Sirote & Permutt, P.C.*, 40 F.3d at 361.

■ Having found that Schilling failed to meet his obligations under 11 U.S.C. § 328(c) and 11 U.S.C. § 328(c), the Court must fashion an appropriate sanction for Schilling's conduct. In this regard, the Court is given discretion to fashion a remedy by the use of the word "may" in 11 U.S.C. § 326(d) and 11 U.S.C. § 328(c). *See also* 11 U.S.C. § 105(a) and the Court's inherent authority. For general guidance, the Court has reviewed several opinions from this Circuit applying sanctions, including *Michel v. Federated Department Stores, Inc.*, 44 F.3d 1310 (6th Cir.1995), *In re Big Rivers Electric Corporation*, 284 B.R. 580 (W.D.Ky.2002), and unpublished opinions in cases such as *In re Triple S Restaurants, Inc.*, Case No. 94–32848, A.P. No. 96–3128 (Bankr.W.D.Ky. Nov. 20, 2002) and *In re Gerald Anthony Smith*, Case No. 01–30931 (Bankr.W.D.Ky. Sept. 17, 2002).[3] Although from another Circuit, the Court finds *Gray v. English*, 30 F.3d 1319 (10th Cir.1994) particularly instructive. As stated in that case: "In exercising the discretion granted by the statute [11 U.S.C. § 328(c)] we think the court should lean strongly toward denial of fees, and if the past benefit to the wrongdoer fiduciary can be quantified, to require disgorgement of compensation previously paid that fiduciary even before the conflict arose." *Gray v. English*, 30 F.3d at 1324.

■ The Court does not believe that Schilling should be required to forfeit all fees earned as Trustee and Trustee's attorney in this case. A forfeiture of *all* compensation would be unduly harsh here. No evidence has been presented that Schilling intentionally accepted conflicting representations. And, although the Court sees a certain measure of hubris in Schilling's relying solely on his memory to conduct conflict checks, the Court does not believe that this warrants complete forfeiture of fees.[4] Furthermore, although Schilling has been sanctioned in the past for ethical lapses, this Court does not view those matters as evidence of a continuing pattern of violations. The events of this case occurred prior to the imposition of such sanctions. Presumably, Schilling has learned from those mistakes. The Court believes that if Schilling were faced today with the situation presented in February 2002, and assuming he had a conflict check system in place, he would not accept representation of Heideman.

The Court, then, is left with fashioning a remedy for what should be a one-time occurrence. Given the totality of the facts of this case, the Court finds it appropriate to require Schilling to forfeit fees earned as the Trustee's attorney in this case in an amount equal to the $11,075.46 paid him by Heideman. When Michael Heideman contacted Schilling in 2002, Schilling relied on his memory to determine whether he was currently representing an interest adverse to Heideman and whether representing Heideman would be adverse to any interest he currently represented. Unfortunately, Schilling's memory failed him, and he forgot that he was currently representing the Grieb estate with respect to a claim adverse to Heideman's claim. Had Schilling used a formal conflict check system with a database of current representations, he would have recognized the clear conflict

---

3. The Court notes that in two of these cases, *Big Rivers* and *Smith,* Schilling was the person sanctioned; and in one case, *Triple S,* Schilling pursued sanctions against another attorney.

4. Of course, the Court could view the matter differently if Schilling fails to implement a formal conflict check system and continues to suffer from a faulty memory.

and, presumably, declined to represent Heideman. In that case, he would never have earned the $11,075.46 paid him by Heideman. Thus, requiring Schilling to forfeit fees in that amount in this case puts Schilling in roughly the same position as if he had recognized the conflict and declined to represent Heideman.

■ The Court notes that reducing Schilling's compensation as the Trustee's attorney by $11,075.46 will result in an increase in disbursements from the Grieb estate. Since the Trustee's fee in this case will be calculated as a percentage of disbursements, the forfeiture could increase the Trustee's fee absent further action by the Court. That would be inconsistent with the findings herein and such a windfall would serve to diminish the seriousness of Schilling's actions and omissions. Therefore, the Court will also require that the Trustee's fee in this case shall be calculated without regard to any increase in the disbursements arising from the $11,075.46 forfeiture.

■ Finally, the Court believes it necessary for Schilling to withdraw as counsel for Heideman and also the Trustee. Even if the conflict developed unintentionally, it is still impermissible and will not be ignored. Under general principles of professional responsibility, attorneys typically must withdraw from representing both parties when a conflict develops. As with the issue of the Trustee's fee, holding otherwise here would be inconsistent with the findings herein and would serve to diminish the seriousness of the situation.

As noted previously, separate Orders consistent with the foregoing have been entered in accordance with Fed.R. Bankr.P. 9021.

## ORDER

THIS CORE PROCEEDING is before the Court on the Chapter 7 Trustee's Mo-

tion for the Court to determine whether the legal representation by J. Baxter Schilling ("Schilling") of his clients, Michael Heideman and other Heideman family members and estates (collectively, "Heideman"), in *In re Louisville Manufacturing Company, Inc.*, Case No. 98–32866 (W.D.Ky.) (the "LMC Bankruptcy") conflicts with Schilling's statutory and ethical duties as Trustee in this case. Pursuant to the Court's Memorandum–Opinion entered this same date and incorporated herein by reference, and the Court being otherwise sufficiently advised,

IT IS HEREBY ORDERED that (1) Schilling's compensation as the Trustee's attorney be reduced by $11,075.46, the amount of fees paid to him by Heideman for his representation in the LMC Bankruptcy; (2) Schilling's compensation as the Trustee in this case be calculated without reference to the amounts by which Schilling's compensation as the Trustee's attorney is reduced pursuant to the foregoing, i.e., such amounts shall not be included in the total disbursements used to calculate the Trustee's percentage fee in this case; and (3) Schilling shall be disqualified from serving further as the Trustee's attorney in this case and as attorney for Heideman in the LMC Bankruptcy.