**In the Matter of TOM'S FOODS INC., Debtor.**

**No. 05–40683 RFH.**

United States Bankruptcy Court, M.D. Georgia, Columbus Division.

April 6, 2006.

Mr. David B. Kurzweil, Mr. Jim Secca, Atlanta, GA, for Greenberg Traurig, LLC.

Mr. Ward Stone Jr., Fickling & Co. Building, Macon, GA, for Official Committee of Unsecured Creditors.

Mr. Fife M. Whiteside, Columbus, GA, for Ad Hoc Committee of Former Employees of Tom's Foods.

Mr. Thomas E. Austin, Jr., Mr. Leon Strickland Jones, Atlanta, GA, for Wachovia Bank, N.A.

Ms. Elizabeth A. Hardy, Mr. Rob Fennimore, Office of the U.S. Trustee, Macon, GA, for United States Trustee for Region 21.

### MEMORANDUM OPINION

ROBERT F. HERSHNER, JR., Chief Judge.

Greenberg Traurig, LLP, filed on January 17, 2006, its Ninth Monthly And Final Fee Application Of Greenberg Traurig, LLP For Allowance Of Compensation And For Reimbursement Of Disbursements As Counsel To The Debtor And Debtor In Possession.[1] Wachovia Bank, N.A. and Wachovia Bank, N.A. d/b/a South Trust Bank filed an objection on February 7, 2006.[2] The Ad Hoc Committee of Former Employees of Tom's Foods Inc. filed an objection on February 7, 2006.[3] Greenberg Traurig's application came on for hearing on February 15, 2006. The Court, having considered the application and the arguments of counsel, now publishes this memorandum opinion.

Tom's Foods Inc., Debtor, was a leading regional manufacturer of snack foods. Debtor's products were sold primarily in convenience stores and in vending machines. Debtor had some 1,400 employees. Debtor's franchisees employed an additional 2,000 employees.

Debtor filed a petition under Chapter 11 of the Bankruptcy Code on April 6, 2005. The Court entered an order approving Greenberg Traurig as counsel for Debtor, the Chapter 11 debtor-in-possession.[4]

Debtor owed a prepetition obligation of $60,000,000 to the Bank of New York, as Indentured Trustee and Collateral Agent. The obligation was secured by liens on most of Debtor's real property, equipment, and intellectual property. Debtor initially intended to reorganize and to continue in business.

The Court entered a final cash collateral order on May 4, 2005. Debtor obtained postpetition financing from the "DIP Lenders." In the order, the Court determined that the Bank of New York was oversecured and granted priming liens to the DIP Lenders on the Bank of New York's collateral.[5] The Court granted the Bank of New York an administrative superpriority claim under section 507(b) of the Bankruptcy Code.[6] The superpriority claim could be satisfied from the proceeds of any bankruptcy avoidance actions.[7]

The Court entered an order on May 4, 2005, establishing procedures for the payment of interim compensation and reimbursement of expenses to professionals.[8] The order provided that professionals could submit monthly applications for interim compensation. If no objections were filed within twenty days of the application being filed, Debtor would pay the compensation and expenses sought in the application. The interim applications are subject

---

1. Docket No. 840.

2. Docket No. 861.

3. Docket No. 863.

4. Docket No. 7.

5. Docket No. 134, pp. 5, 11–12.

6. 11 U.S.C.A. § 507(b) (West 2004).

7. Docket No. 134, pp. 24–25, ¶ 21,; Docket No. 771, pp. 2–3.

8. Docket No. 133.

to final allowance by the Court. Interim payments are subject to disgorgement upon order of the Court.

Debtor's reorganization efforts were not successful. Debtor determined that a sale of its assets as a going concern was its only option. The Court entered an order on September 23, 2005, authorizing Debtor to conduct an auction of its assets in New York City on October 17, 2005.[9] The DIP Lenders agreed to be a "stalking horse bidder." The value of the stalking horse bid was about $20,000,000. The proposed sale would allow most of Debtor's employees to keep their jobs.

The highest and best bidder at the auction was Columbus Capital Acquisitions, Inc. The value of the bid was about $40,000,000. The Court entered an order on October 19, 2005, approving the sale of Debtor's assets to Columbus Capital Acquisitions.[10] The DIP Lenders' claims were paid from the sale proceeds. The balance of the proceeds was placed in escrow.

The Bank of New York filed on November 14, 2005, a motion seeking the funds being held in escrow.[11] The Bank of New York contended that it was entitled to the funds as part of its administrative superpriority claim under section 507(b). The motion came on for hearing on December 16, 2005. Counsel for a number of parties in interest and the Assistant United States Trustee were present. At the conclusion of the hearing, counsel for the Bank of New York announced that an agreement had been reached.[12]

The Court entered an order on December 16, 2005, which provided that the Bank of New York had a valid and enforceable administrative superpriority claim of not less than $38,000,000 for the diminution in value of its collateral. The order provided that the Bank of New York would receive all but $420,000 of the funds being held in escrow.[13] The Bank of New York would receive 90 per cent of the net proceeds of any avoidance actions. The $420,000 would be distributed as follows: $277,500 to the professionals of the Creditors Committee; $132,500 to Greenberg Traurig; and $10,000 to Debtor's other counsel (Hatcher Stubbs). The order provided that 10 per cent of the net proceeds of any avoidance actions would be paid in the following order: first, for certain unpaid "professional" fees and expenses;[14] second, for administrative obligations of Debtor's estate; and finally to unsecured claims of Debtor's estate.[15]

At the hearing on December 16, 2005, counsel for the Creditors Committee stated that it was highly unlikely that unsecured creditors would receive any disbursement. Also at the hearing, Greenberg Traurig agreed to resign as counsel for Debtor. Debtor's bankruptcy estate was to be "wrapped up" by a Responsible Officer, Eugene I. Davis.

The Court entered an order on January 3, 2006, approving Scroggins & Williamson as counsel for Debtor's Responsible Officer.[16] The Court entered an order on January 26, 2006, approving the withdraw-

9. Docket No. 504.

10. Docket No. 600.

11. Docket No. 661.

12. The Court noted the concerns expressed by the Assistant United States Trustee.

13. Docket No. 771, pp. 6–8.

14. "Professionals" mean certain professionals of Debtor and of the Creditors Committee. Docket No. 771, Exhibit A, p. 1.

15. Docket No. 771, Exhibit A, p. 3.

16. Docket No. 809.

al of Greenberg Traurig as counsel for Debtor.[17]

Greenberg Traurig filed on January 17, 2006, its ninth monthly and final application for compensation and expenses.[18] The ninth monthly application is for the period from December 1 through 31, 2005, and seeks $93,232.50 in interim compensation and $3,591.70 in expenses. The final application is for the period from April 6, 2005, through December 31, 2005. The final application seeks $2,069,557 in compensation and $138,588.60 in expenses. Greenberg Traurig has already received payments totaling some $1,900,000 for interim compensation and expenses. Greenberg Traurig now seeks payment of the remaining $308,145.

Debtor, as the Chapter 11 debtor-in-possession, had the rights, powers, and duties of a trustee. 11 U.S.C.A. § 1107(a) (West 2004).

▮ Debtor could employ, with court approval, one or more attorneys to assist Debtor in carrying out its duties. The attorneys must not hold or represent an interest adverse to the estate and must be disinterested persons.[19] The Court, after notice and a hearing, may award the attorneys reasonable compensation for actual, necessary services and reimbursement of actual, necessary expenses. The Bankruptcy Code sets forth the factors the Court must consider in determining the amount of reasonable compensation.[20]

17. Docket No. 856.

18. Docket No. 840.

19. The Bankruptcy Code provides as follows:
§ 327. **Employment of professional persons**
(a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.
11 U.S.C.A. § 327(a) (West 2004).

20. The Bankruptcy Code provides:
§ 330. *Compensation of officers*
(a)(1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, an examiner, a professional person employed under section 327 or 1103—
(A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by any such person; and
(B) reimbursement for actual, necessary expenses.
(2) The court may, on its own motion or on the motion of the United States Trustee,

the United States Trustee for the District or Region, the trustee for the estate, or any other party in interest, award compensation that is less than the amount of compensation that is requested.
(3)(A) In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—
(A) the time spent on such services;
(B) the rates charged for such services;
(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue or task addressed; and
(E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.
(4)(A) Except as provided in subparagraph (B), the court shall not allow compensation for—
(I) unnecessary duplication of services; or
(ii) services that were not—
(I) reasonably likely to benefit the debtor's estate; or

The Court may deny allowance of compensation if at any time during the attorneys' employment, the attorneys are not disinterested persons or represent or hold interests adverse to the estate.[21] Attorneys may apply for and receive interim compensation.[22] The Court may order the return of interim compensation that exceeds the allowance of final compensation.[23]

In *Coastal Fuels Marketing, Inc. v. Florida Express Shipping Co.*,[24] the Eleventh Circuit Court of Appeals stated:

> We have previously said that a fee applicant bears the burden of establishing entitlement and of documenting the appropriate hours and hourly rates. *See Norman v. Housing Authority of the City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir.1988).... Moreover, we have said that a court's order on attorney's fees must allow meaningful appellate review. The trial court should articulate and give principled reasons for its decisions and show some calculations. If the court disallows hours, it must explain which hours are disallowed and show why an award of those hours would be improper. *Id.* at 1304.

207 F.3d at 1252.

■ "Given the Bankruptcy Code's overriding concern for keeping administrative expenses to a minimum so as to preserve as much of the estate as possible for the creditors, we must carefully review the legitimacy of such claims." *McMillan v. Joseph Decosimo and Co.*, (*In re Das A. Borden & Co.*), 131 F.3d 1459, 1464 (11th Cir.1997).

■ "Under no circumstances may a trustee or the trustee's attorney 'obtain excessive fees that unreasonably diminish the estate.'" *Grant v. George Schumann Tire & Battery Co.*, 908 F.2d 874, 884 (11th Cir.1990).

---

(II) necessary to the administration of the case.
. . .
(5) The court shall reduce the amount of compensation awarded under this section by the amount of any interim compensation awarded under section 331, and, if in the amount of such interim compensation exceeds the amount of compensation awarded under this section, may order the return of the excess to the estate.
(6) Any compensation awarded for the preparation of a fee application shall be based on the level and skill reasonably required to prepare the application.
11 U.S.C.A. § 330(a) (West 2004).

21. The Bankruptcy Code provides:
§ 328. **Limitation on compensation of professional persons**
. . .
(c) Except as provided in section 327(c), 327(e), or 1107(b) of this title, the court may deny allowance of compensation for services and reimbursement of expenses of a professional person employed under section 327 or 1103 of this title if, at any time during such professional person's employment under section 327 or 1103 of this title, such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed.
11 U.S.C.A. § 328(c) (West 2004).

22. The Bankruptcy Code provides:
§ 331. **Interim compensation**
A trustee, an examiner, a debtor's attorney, or any professional person employed under section 327 or 1103 of this title may apply to the court not more than once every 120 days after an order for such relief in a case under this title, or more often is the court permits, for such compensation for services rendered before the date of such an application or reimbursement for expenses incurred before such date as is provided under section 330 of this title. After notice and a hearing, the court may allow and disburse to such applicant such compensation or reimbursement.
11 U.S.C.A. § 331 (West 2004).

23. 11 U.S.C.A. § 330(a)(5) (West 2004).

24. 207 F.3d 1247 (11th Cir.2000).

■ Attorney compensation is based upon whether the services were reasonable and necessary to the representation of the bankruptcy estate. Compensation is not disallowed simply because the effort was unsuccessful. *Port Royal Land & Timber Co. v. Berkowitz, Lefkovits, Isom & Kushner,* 924 F.2d 208 (11th Cir.1991).

■ In *Electro–Wire Products, Inc. v. Sirote & Permutt, P.C., (In re Prince),*[25] the Eleventh Circuit stated that section 328(c) permits but does not require a court to deny compensation to professionals who are not disinterested persons. In the absence of actual injury or prejudice to the debtor's estate, the denial of fees should not be rigidly applied. When injury to the estate occurs, denial of fees is proper. The accurate measure of prejudice is whether the professional could have unbiasedly made decisions in the best interest of its client. 40 F.3d at 359–60.

In *Kagan v. Stubbe, (In re El San Juan Hotel Corp.),*[26] the Bankruptcy Appellate Panel of the First Circuit held that an attorney for a bankruptcy trustee has a fiduciary obligation to the trustee and the estate and must refrain from any adverse interest. 239 B.R. at 646.

Wachovia Bank and the Ad Hoc Committee of Former Employees of Tom's Foods Inc., collectively "Respondents," contend that they could possibly receive a distribution if the Court disallows some of the compensation sought by Greenberg Traurig.

■ Respondents contend that Greenberg Traurig rendered excessive and unnecessary services. Respondents contend that Greenberg Traurig had too many attorneys billing too many hours. Respondents contend that Debtor was losing money from "day one." Respondents contend that Debtor had no hope of reorganizing and that time spent developing a plan of reorganization was wasteful. Respondents contend that Debtor should have initially pursued a liquidation of its assets rather than trying to reorganize as a going concern.

At the hearing on February 15, 2006, the Official Committee of Unsecured Creditors stated that, in its view, Greenberg Traurig's application for compensation was reasonable. The Creditors Committee does not oppose the application. The Creditors Committee noted that the results in this bankruptcy case were disappointing but realistic. The Creditors Committee noted that Debtor had an outdated management model and distribution system. The Creditors Committee's opinion is that Debtor simply did not have the time or money to change its business operations. The Creditors Committee's position is that Greenberg Traurig did an excellent job running the auction. The Creditors Committee further noted that the auction was well attended with vigorous bidding.

The Assistant United States Trustee stated at the February 15, 2006 hearing that she did not object "at this point" to the application.

Greenberg Traurig served as primary counsel to Debtor, the Chapter 11 debtor-in-possession. Debtor's case involved highly contested and complex negotiations and hearings. The major parties in interest were represented by attorneys who are sophisticated practitioners. Greenberg Traurig billed a substantial number of hours attempting to stabilize Debtor's business and to develop a plan of reorganization. Almost 4,000 jobs were at risk. In the Court's view, Debtor's inability to reor-

**25.** 40 F.3d 356 (11th Cir.1994).

**26.** 239 B.R. 635 (1st Cir. BAP 1999), *affd.* 230 F.3d 1347 (1st Cir.2000).

ganize was due to factors other than the skill and efforts of Greenberg Traurig. The Court is persuaded that Greenberg Traurig worked hard and did a good job under difficult circumstances.

Debtor changed from a reorganization case to a liquidation case some five months after its bankruptcy filing. The Court is persuaded, under the facts of the case, that this was not an unreasonable period to consider the prospects of reorganizing as a going concern. The Court notes the efforts of Greenberg Traurig in marketing Debtor's assets, organizing the auction, and working with potential bidders. The Court is persuaded that Greenberg Traurig's efforts are primarily responsible for a final bid that was twice the stalking horse bid.

Greenberg Traurig has spent considerable time assisting the newly appointed counsel for Debtor's Responsible Officer. Greenberg Traurig does not seek compensation for these services.

The Court has reviewed Greenberg Traurig's application and is persuaded that the services and the expenses were reasonable and necessary at the time the services were rendered.

■ Respondents also contend that Greenberg Traurig had conflicts of interest in providing legal services to both Debtor and Debtor's Qualified Pension and Profit sharing plan. Debtor's pension plan was substantially underfunded. Respondents contend that the pension plan was a creditor of Debtor's estate and that it was not proper for Greenberg Traurig to represent both Debtor and Debtor's pension plan. Respondents urge the Court to deny compensation for services rendered to the pension plan.

Greenberg Traurig seeks allowance of $151,350 for services related to Debtor's pension plan.[27] Respondents contend that Greenberg Traurig has received $183,000 from the pension plan itself.[28]

At the hearing on February 15, 2006, Greenberg Traurig's representative, David B. Kurzweil, stated that Debtor's pension plan was charged for and paid for specific plan related items that dealt with administration of the pension plan. Mr. Kurzweil stated that items that dealt with advising Debtor's senior management on how to deal with the pension plan were charged to Debtor.[29]

Scott D. Cousins is an attorney in the firm of Greenberg Traurig. Mr. Cousins filed an affidavit on June 24, 2005,[30] in which he stated under oath as follows:

9. In addition, in connection with its retention by the Debtor, Greenberg Traurig will also be required to render certain services and incur certain costs in connection with the Tom's Foods Pension Plan (the "Plan"). The Debtor has requested that Greenberg Traurig look to the Plan for payment of its Plan related fees and expenses. Thus, Greenberg Traurig hereby discloses to the Court that compensation and reimbursement for work performed with respect to the Plan (the "Plan Fees") will be received from the Plan by Greenberg Traurig. To the extent that the Plan does not reimburse Greenberg Traurig for the Plan Fees, Greenberg Traurig discloses that it will look to the Debtor for reimbursement of such fees.

Docket No. 244, p. 3.

Greenberg Traurig, in its response to Respondents' objections stated:

27. Greenberg Traurig used Action Code 806 to record time for services rendered to Debtor's pension plan.

28. See Docket No. 559 and 637.

29. Docket No. 903, p. 42.

30. Docket No. 244.

19. Finally, in addition to joining in all the objections raised in the Final Fee Objection, the Ad Hoc Objection also alleges that Greenberg Traurig "had undisclosed conflicts in providing legal services to the Debtors Qualified Pension and Profit sharing plan which was a creditor." Ad Hoc Objection, ¶ 2. Simply put, the Ad Hoc Objection is not correct—at no time during its representation of the Debtor in this Case did Greenberg Traurig represent the Debtor's pension or profit sharing plan. Moreover, with respect to the work related to the Debtor's pension plan (the "Pension Plan") that Greenberg Traurig performed on behalf of the Debtor, in its capacity as the fiduciary of the Pension Plan, Greenberg Traurig actually made several disclosures in this regard.

Docket No. 869, p. 10.

At the hearing on February 15, 2006, Greenberg Traurig stated that it had disclosed that it represented "Debtor as the administrator of the pension plan." [31]

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") governs bankruptcy cases filed on or after October 17, 2005. Debtor filed for bankruptcy relief on April 6, 2005. Although Debtor's bankruptcy case is not governed by BAPCPA, the Court finds certain provisions in BAPCPA to be instructional. BPCPA requires a Chapter 11 debtor [32] to perform the duties specified in section 704(a)(11) of the Bankruptcy Code which provides:

**11 USC § 704. Duties of trustee**

(a) The trustee shall—

. . .

(11) if, at the time of the commencement of the case, the debtor (or any entity designated by the debtor)

served as the administrator (as defined in section 3 of the Employee Retirement Income Security Act of 1974) of an employee benefit plan, continue to perform the obligations required of the administrator;

11 U.S.C.A. 704(a)(11) (effective Oct. 17, 2005).

*Collier on Bankruptcy* states that section 704(a)(11) codifies the position taken by the Department of Labor. *Collier* also states that "dealing with the debtor's employee benefit plans, whether the debtor is liquidating or reorganizing, is an integral part of dealing with the debtor's business." 7 *Collier on Bankruptcy,* ¶ 1106.03[7] (15th ed. rev.2005).

Greenberg Traurig provided services to Debtor as the administrator of Debtor's pension plan. An integral part of Debtor's business was dealing with its pension plan. In the Court's view, Greenberg Traurig provided necessary and beneficial services to Debtor's senior management. The Court is not persuaded that the services caused any actual injury or prejudice to Debtor's estate. The Court is persuaded that Greenberg Traurig is entitled to be compensated from Debtor's bankruptcy estate in the amount of $151,350 for services provided to Debtor as the administrator of Debtor's pension plan.

The Court is persuaded that Greenberg Traurig is entitled to the allowance of compensation and reimbursement of expenses sought in the ninth and final fee application.

An order in accordance with this memorandum opinion shall be entered this date.

---

31. Docket No. 903, p. 11.

32. 11 U.S.C.A. § 1106(a)(1) (effective Oct. 17, 2005).